PEOPLE'S SAVINGS BANK v. BIG ROCK STONE & CONSTRUCTION

COMPANY.

Opinion delivered February 4, 1907.

CONTRACT—PUBLIC POLICY.—It is against public policy to permit a bank of which the mayor of a city is a stockholder and president to take an assignment of the claim of a contractor against the city for the price of work which he has performed for the city, and which work must be inspected and accepted for the city by a board of which the mayor is chairman.

Appeal from Pulaski Chancery Court; *Jesse C. Hart,* Chancellor; affirmed.

STATEMENT BY THE COURT.

On the 18th of March, 1904, W. E. Lenon was mayor of the city of Little Rock. As mayor he was president of the board of public affairs of the city, which board was composed of himself, Herman Kahn and J. L. Reid. This board was intrusted with

the letting of paving and other contracts for the performance of work for the city and with the inspection and acceptance of such work. This board on the 18th day of March after due advertisement let a contract for the grading and paving of Shell Alley in that city to one Chas. T. Torbert, he being the lowest bidder for the work, for which work the board agreed to pay him the sum of $667.50. The contract was signed by W. E. Lenon as president of the board.

Lenon at this time was a stockholder in the People's Bank and president thereof. To enable Torbert to complete his contract with the city, the bank advanced him $147.43, and took an assignment of his claim against the city.

Torbert became indebted to the Big Rock Stone & Construction Company in the sum of $223.61 for crushed rock, and to the Arkansas Brick & Manufacturing Company in the sum of $82 for cement, this crushed rock and cement being used by Torbert in paving the alley. Afterwards these companies brought an action in equity to subject the money due from the city to Torbert for paving the alley to the payment of their debts against him. The People's Bank filed an intervening petition, claiming the fund by virtue of its loan to Torbert and his assignment to the bank of his claim against the city.

The plaintiffs filed an answer, in which they alleged that, at the time the bank made the contract with Torbert, Lenon was mayor of the city and president of the board of public affairs and president and stockholder in the bank, and that as such he acted for the bank in securing the contract with Torbert set up in the intervening petition of the bank. The answer further alleged that by this transaction Lenon became a beneficiary of and party to the contract, and placed himself in a position where he could not properly represent the city in the final inspection and acceptance of the work done by defendant; that, notwithstanding this dual interest, Lenon acted as president of the board of public affairs, and as such accepted the work of defendant; that it would therefore be against the policy of the law to permit the intervener to inforce its alleged contract with defendant.

On the hearing the chancellor sustained the answer of the plaintiffs, and found in their favor, and gave judgment accordingly, and, the money due from the city to Torbert having been

paid into the registry of the court, the court made an order that such money be paid to plaintiffs to be applied on their claims. The bank appealed.

*Bradshaw, Rhoton & Helm,* for appellant.

1. If an ordinance is passed by the council authorizing the expenditure, and bids are advertised for, any person can make a contract with the Board of Public Affairs, provided his is the lowest bid, notwithstanding he may be related to a member of the board, or associated with him in business. Kirby's Digest, § § 5643, 5644. There is no allegation in the complaint that would entitle appellees to conventional subrogation; but the allegations of the intervention, and the proof, show an assignment of Torbert's claim to appellant whereby conventional subrogation is established. 56 Ark. 480. The legal right to the fund is in appellant, because it furnished the money which was used to pay laborers and to pay for material, and which could not have been obtained except upon assignment of the amount due from the city. 58 Ark. 348; 33 Mich. 61; 47 Mich. 236. A contract is not absolutely void between two corporations because some of the directors of the two are common to both. 33 L. R. A. 788; 92 Ind. 518.

2. The contract is not void as against public policy, but in any case appellees can not complain. Only parties to a contract void or voidable as against public policy can be heard to complain. The presumption of law is in favor of the legality of a contract as against its illegality, and the general rule is to give a contract that interpretation which will give it validity. 117 U. S. 567; 15 Am. & Eng. Enc. of L. 3; 80 Ind. 245. See, also, 11 Ark. 475. When a contract based upon a lawful consideration is for the performance of an act capable of being performed in a legal manner, the contract is valid, even though one of the contracting parties violates the law. 15 Am. & Eng. Enc. of L. 937.

*Murphy, Coleman & Lewis,* for appellees.

The appellant's contract with Torbert can not be enforced because its enforcement would be against public policy.

As to whether or not a contract is against public policy, the test is the evil tendency of the contract, and not the actual results;

and if its tendency is opposed to the interests of the public, it is invalid, even though the intent of the parties was good, and no injury to the public would result in the particular case. 9 Cyc. 481; 63 Ark. 320-21; 15 Am. & Eng. Enc. of L. (2 Ed.), 934; 49 Am. Rep. 746; 43 N. Y. 147; 137 Ind. 655; 80 Am. Dec. 677. See, also, 103 U. S. 658; *Id.* 261; 135 U. S. 507; 27 Wash. 543; 70 N. C. 393; 80 Ky. 681; 136 Mass. 265; 30 Tex. Civ. App. 561; 39 Am. Rep. 17. It is immaterial whether or not it is a party to the contract who brings to the notice of the court the fact of its being against public policy. "It is for the protection of public interests that the courts take notice of the immorality of such contracts whenever by any means made aware of it." 3 Fed. 10. The bank can not enforce a contract which its president has made in violation of public duty. Cook on Stock & Stockholders, § 663*a*; *Id.* § 6; Spelling on Priv. Corp. § § 829, 831; 31 Mich. 490; 85 Tenn. 572; 23 Atl. 802; 87 Ala. 211; 20 Fed. 700.

RIDDICK, J., (after stating the facts.) The only question in this case is whether it is against public policy to permit a bank of which the mayor of a city is a stockholder and president to take an assignment of the claim of a contractor against the city for the price of work which he has performed for the city, and which work must be inspected and accepted for the city by a board of which the mayor is chairman? The bank, acting through its president and other officers, in good faith advanced the contractor certain sums of money to enable him to carry out his contract with the city, and to secure the loan took from him an assignment of his claim against the city. At the time this was done the work had not been completed, and therefore had not been inspected or accepted by the city. It would certainly be against public policy to permit the mayor of a city to take an assignment of such a claim to himself and to become personally interested in this way in a contract against the city of which he was the chief officer and a member of a board whose duty it was to inspect the work and pass upon the question as to whether it had been performed in accordance with the contract. In such a case the law will not permit him to put himself in a position where his own interests may conflict with those of the city which it is his duty to guard and protect. But the same rule which prevents him from doing that as an individual will prevent him

from doing so as the president of a corporation in which he is also a stockholder. His interests as a stockholder and president of the corporation might conflict with the interests of the city of which he is mayor and chairman of the board of public affairs charged with the duty of inspecting the work in question. If a question should arise before the board of public affairs as to whether or not the contractor had properly performed his work and was entitled to be paid the contract price, the duty of the mayor, as an officer representing the city, might require the rejection of the work, which would be opposed to his interests as president and stockholder in the bank. The law aims to shield officers against such temptations by forbidding them from entering into contracts which might bring their private interests into antagonism with those of the city and by declaring that all such contracts are void. *West* v. *Camden*, 135 U. S. 507; *Holcomb* v. *Weaver*, 136 Mass. 265; *Edwards* v. *Randle*, 63 Ark. 320; 9 Cyc. 481; 15 Am. & Eng. Enc. Law (2 Ed.), 934-976.

There is nothing in our statute that changes this rule of law. On the contrary, it goes further, and forbids the board of public affairs to make any contract with any person associated in business with or related within the sixth degree of consanguinity or affinity under the civil law to any member of the board or member of the city council except upon advertisement and to the lowest bidder. It provides that "every contract in which any such forbidden person shall have an interest, direct or indirect, shall be utterly null and void." And requires that an affidavit be filed before payment showing that no person forbidden by the act has an interest in the contract. Kirby's Digest, § § 5644, 5647.

There is nothing in this language to justify a member of the board in becoming interested in a contract, even after it has been made to the lowest bidder, when his duty requires that he shall inspect and determine whether the work due under the contract shall be accepted by the city or not. In this case the original contract with Torbert was valid, for no member of the board or council was interested therein, but the subsequent contract by which Torbert, before his work had been completed and accepted, assigned his claim against the city under the contract to the bank of which the mayor was president and stockholder came

within the rule that contracts which place the individual interests of public officers in conflict with their duty to the public and put them under an inducement to act in violation of such duty are illegal. By this assignment the mayor, as president and stockholder of the bank, became interested in a contract, the work done under which he, as member of the board of public affairs, had to approve and accept for the city. The statute declares that all such contracts "shall be utterly null and void," and this is only a restatement of the rule of the common law. Such contracts being illegal, no court can enforce them, for to do so would be for "the law to aid in its own undoing." *Berka* v. *Woodward*, 125 Cal. 119, 45 L. R. A. 420; *Melliss* v. *Shirley Local Board*, 16 Q. B. Div. 446; *Brown* v. *Tarkington*, 3 Wall. (U. S.), 377; *Oscanyan* v. *Winchester Arms Co.*, 103 U. S. 261; 15 Am. & Eng. Enc. Law (2 Ed.), 971.

While we are well satisfied that in this particular instance both the mayor and the bank officials acted in entire good faith, and really intended what they did for the benefit of the city and its contractor, yet the law looks not alone at this particular instance, but to what a rule that recognized the validity of such contracts would lead. And, while these men acted from honest motives, yet, when they contracted for the assignment of this claim against the city, they entered into a contract which the law as a matter of public policy will not enforce. The judgment of the chancellor was therefore in our opinion right, and his decree is affirmed.

McCULLOCH, J., dissenting.