PARKIN PRTG. & STAT. CO. *v.* ARK. PRTG. & LITHO. CO.

5-2692                                    354 S. W. 2d 560

Opinion delivered February 26, 1962.

*Mehaffy, Smith & Williams,* by *Pat Mehaffy, Herschel H. Friday, Jr.,* and *Robert V. Light,* for appellant.

*Spitzberg, Bonner, Mitchell* and *Hays,* by *H. Maurice Mitchell* and *Allan W. Horne,* for appellee.

*J. Frank Holt,* Attorney General, by *Jack Holt, Jr.,* Chief Asst. Attorney General, for cross appellees Orval E. Faubus, et al.

ED. F. McFADDIN, Associate Justice. This litigation concerns Article 19, Section 15, of our Arkansas Constitution, which reads:

"All stationery, printing, paper, fuel, for the use of the General Assembly and other departments of Government, shall be furnished and the printing, binding and distributing of the laws, journals, department reports and all other printing and binding, and the repairing and furnishing the halls and rooms used for the meetings of the General Assembly and its committees, shall be performed under contract to be given to the lowest responsible bidder, below such maximum price and under such regulations as shall be prescribed by law. No member or officer of any department of the government shall in any way be interested in such contracts, and all such contracts shall be subject to the approval of the Governor, Auditor and Treasurer."[1]

---

[1] This section of the Constitution has been before us in the following cases: *Woodruff* v. *Berry,* 40 Ark. 251; *Ark. Democrat* v. *Press Ptg. Co.,* 57 Ark. 322, 21 S.W. 586; *Hodges* v. *Lawyers Co-op. Co.,* 111 Ark. 571, 164 S.W. 294; *Ellison* v. *Oliver,* 147 Ark. 252, 227 S.W. 586; *Hopper* v. *Fagan,* 151 Ark. 428, 236 S.W. 820; *Muncrief* v. *Hall,* 222

At the outset, we identify some of the persons and companies whose names appear herein:

(a) Appellant Parkin Printing & Stationery Company (hereinafter called "Parkin Company") is an Arkansas corporation engaged in the printing and stationery business. Parkin Company is a family corporation, with 2,226 shares of capital stock outstanding, of which amount Harry W. Parkin (President of the corporation) owns 980 shares, and the remaining shares are owned by Mr. Parkin's sister, brother-in-law, mother, and wife; and that stock situation has existed since January, 1957.

(b) Harry W. Parkin is, and has been since 1957, a member (and now Chairman) of the State Highway Commission of Arkansas, having been appointed and confirmed for a 10-year term in accordance with Amendment No. 42 to the Arkansas Constitution, which is the organic law creating the State Highway Commission.

(c) Cross-appellees are the Governor, Secretary of State, State Treasurer, and State Auditor.

(d) The appellee Arkansas Printing & Lithographing Company (hereinafter called "Arkansas Printing Company") is an Arkansas corporation engaged in the printing and stationery business in competition to Parkin Company.

(e) The Arkansas Stationery & Furniture Company is a subsidiary corporation wholly owned by the Arkansas Printing Company and will sometimes be referred to under that name.

(f) Keith J. Arthur is an individual taxpayer and citizen of the State of Arkansas.

Ark. 570, 262 S.W. 2d 92. Our research discloses that Art. 19, Sec. 15, of our 1874 Constitution is identical with Art. 3, Sec. 12 of the Pennsylvania Constitution adopted in 1873; and also with Art. 4, Sec. 30 of the Alabama Constitution of 1875. For somewhat similar provisions in other constitutions, see: Art. 4, Sec. 107 of Mississippi Constitution of 1890; Art. 5, Sec. 29 of Colorado Constitution of 1876; Art. 15, Sec. 8 of Delaware Constitution of 1897; Art. 5, Sec. 30 of Montana Constitution of 1889; and Sec. 247 of Kentucky Constitution of 1891.

In accordance with § 14-301 *et seq.* Ark. Stats., the Secretary of State duly advertised for bids on contracts of printing and supplies for the biennium beginning July 1, 1961 and ending June 30, 1963. Several scores of separate contracts were to be awarded. Parkin Company was the low bidder on fifteen of the contracts,[2] which were awarded to it on July 11, 1961, with all legal requirements observed, *i.e.,* the signing of the contracts and the approval by the designated State Officials. The performance bonds of the Parkin Company on the fifteen contracts were signed by Harry W. Parkin as guarantor.

On November 24, 1961, Arkansas Printing Company and its subsidiary company, and Keith J. Arthur, as a citizen and taxpayer, filed this suit in the Pulaski Chancery Court against Parkin Company and the four State Officials, alleging that all of the fifteen contracts awarded Parkin Company ". . . are void as contracts on behalf of the State of Arkansas because they are in violation of the Constitution of the State of Arkansas.

[2] The fifteen contracts so awarded to Parkin Company were:
Contract No. 1 — Production of poll tax receipts.
Contract No. 2 — All permanently bound blank books, books of record, miscellaneous binding, loose leaf bookkeeping sheets, machine bookkeeping sheets, and loose leaf binders.
Contract No. 8 — Printing the biennial report of Department of Education.
Contract No. 9 — Printing the biennial report of the State Treasurer.
Contract No. 15 — Embossed, engraved, or printed letterheads and envelopes for all state departments.
Contract No. 20 — Furnishing of school registers.
Contract No. 30 — Printing the annual report of the Insurance Commissioner.
Contract No. 31 —Printing the monthly Arkansas State Plant Board news for the Arkansas State Plant Board.
Contract No. 40 — Blank stationery and office supplies.
Contract No. 42 — Printing the bulletin announcements of the University of Arkansas.
Contract No. 44 — Printing blank books for the annual reports of County Supervisors.
Contract No. 52 — Production of special reports in pamphlet form of the department of Planning and Research of the Arkansas State Highway Commission.
Contract No. 60 — Printing of the monthly Arkansas Highway magazine for the State Highway Department by offset process.
Contract No. 62 — Printing the bulletin announcement of the University of Arkansas Graduate Institute of Technology.
Contract No. 63 — Producing bulletins for the geological division of the Arkansas Geological and Conservation Commission.

Harry W. Parkin is and was at all times mentioned herein the president and a principal stockholder of the defendant Parkin Printing & Stationery Co. Said Harry W. Parkin is also a member and the chairman of the Arkansas State Highway Commission. Under Amendment No. 42 to the Constitution of the State of Arkansas, said Highway Commission is 'vested with all the powers and duties now or hereafter imposed by law for the administration of the State Highway Department, together with all powers necessary or proper to enable the commission or any of its officers or employees to carry out fully and effectively the regulations and laws relating to the State Highway Department.' As chairman of said commission, Harry W. Parkin is the highest ranking member and officer of the State Highway Department, a department of the government of the State of Arkansas. Section 15 of Article 19 of the Constitution of the State of Arkansas provides in part 'No member or officer of any department of the government shall in any way be interested in such contracts . . .' "

The four State Officials, appearing by the Attorney General, filed a general denial. The Parkin Company, after admitting some allegations as to the status of officials, denied all other material allegations of the complaint. Upon issues joined, the cause was heard by the Chancery Court on evidence *ore tenus* and resulted in a decree finding and declaring the said fifteen contracts awarded the Parkin Company to be void as in violation of Article 19, Section 15, of the Constitution. From that decree Parkin Company has appealed, urging two points.[3] There is also a cross-appeal: the Arkansas

---

[3] Appellant Parkin Company relies on two points in its brief on appeal, being:

"I. The trial court erred in holding that the Arkansas State Highway Commission is included in the term 'any department of the government' as employed in Article 19 Section 15 of the Constitution of Arkansas.

"II. The public policy of Arkansas does not prohibit a member of the State Highway Commission from holding and performing printing contracts let by the Secretary of State in a procedure prescribed by law and including competitive public bidding."

Printing Company alleged that its subsidiary was the next lowest bidder on Contract No. 40 awarded to Parkin Company and prayed that the State Officials be required to award Contract No. 40 to Arkansas Stationery & Furniture Company as the next low bidder. Such relief was refused, and from that portion of the decree the Arkansas Printing Company and its subsidiary have cross-appealed.[4]

As we stated at the outset, this opinion requires a study of Article 19, Section 15, of the Arkansas Constitution, which section consists of two sentences. The first sentence identifies certain items for contract letting. These are stationery, printing, fuel, binding, furnishing and repairing the halls and rooms of the General Assembly, etc. As to the contracts on these items identified in sentence one, there is this clear prohibition in sentence two: "No member or officer of any department of the government shall in any way be interested in such contracts. . . ." Just why the framers of the Constitution selected the items in sentence number one is of no concern. The fact remains that the Constitution named these items definitely and clearly and there is no denial that all of the fifteen contracts awarded to Parkin Company contain items specified in sentence number one. The defense of Parkin Company is that sentence number two does not apply to Harry W. Parkin for the reasons hereinafter to be considered.

The fact that the Parkin Company which received the fifteen contracts is a *corporation and a separate entity* from Harry W. Parkin, the individual who is a member of the Highway Commission, is a distinction of no consequence, and is not even relied upon by Parkin Company in this case. Our holding in *Peoples Savings Bank* v. *Big Rock Stone Co.*, 81 Ark. 599, 99 S. W. 836, eliminates any such "separate entity" defense. In the cited case, Mr. Lenon as Mayor of Little Rock was

---

[4] The brief on cross-appeal has this one point:
"I. The trial court erred in failing to require the state officials who are cross-appellees to enter into a contract with the cross-appellant Arkansas Stationery & Furniture Company for the stationery and supplies to be furnished under the proposal for Contract No. 40."

President of the Board of Public Affairs which let paving contracts and determined performance thereof; and Mr. Lenon was also a stockholder and President of the Peoples Bank. Torbert held a contract from the City of Little Rock for paving, and in obtaining a loan from Peoples Bank, Torbert made an assignment of his claim against the City on the contract. In deciding the case, Judge Riddick said:

"The only question in this case is whether it is against public policy to permit a bank, of which the mayor of a city is a stockholder and president, to take an assignment of the claim of a contractor against the city for the price of work which he has performed for the city, and which work must be inspected and accepted for the city by a board of which the mayor is chairman."

And the question was answered by the Court in this language:

"By this assignment the mayor, as president and stockholder of the bank, became interested in a contract, the work done under which he, as member of the board of public affairs, had to approve and accept for the city. The statute, declares that all such contracts 'shall be utterly null and void,' and this is only a restatement of the rule of the common law. Such contracts being illegal, no court can enforce them, for to do so would be for 'the law to aid in its own undoing.' *Berka* v. *Woodward,* 125 Cal. 119, 45 L. R. A. 420; *Melliss* v. *Shirley Local Board,* 16 Q. B. Div. 446; *Brown* v. *Tarkington,* 3 Wall (U. S.) 377; *Oscanyan* v. *Winchester Arms Co.,* 103 U. S. 261; 15 Am. & Eng. Enc. Law (2 Ed.) 971."[5]

With all the above explanation, we come to the insistence of Parkin Company that Harry W. Parkin is not a member or officer of "any department of the government" as those words were understood and

[5] There is an annotation in 140 A.L.R. 344, entitled "Public officer's relation to corporation as officer or stockholder as constituting interest within statute or rule of common law against public officer being interested in contract with public," which cites and approves the quoted holding of our Court and collects authorities generally.

meant in the Constitution. Parkin Company points out that in Article 4, Section 1, the Constitution provides:

"The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to-wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another";

that Article 5, Section 1, describes the legislative;[6] that Article 6, Section 1, describes the executive;[7] and that Article 7, Section 1, describes the judicial department.[8] The appellant insists that the State Highway Commission is not in any of these three departments of government and so Harry W. Parkin is not a member of "any department of the government."

We cannot agree with appellant in this very adroit argument which, if accepted, would permit the Legislature to create an agency not in any department and thereby make such agency exempt from Constitutional restraints. This novel and intriguing argument apparently overlooks the fact that our present State Highway Commission was created by Amendment No. 42 to our Constitution, which amendment was proposed by the General Assembly (under Article 19, Section 22 of the Constitution), and adopted by the People in the General Election in November 1952. Section 1 of the Amendment No. 42 provides:

---

[6] This section reads: "The legislative power of this State shall be vested in a General Assembly, which shall consist of the Senate and House of Representatives."

[7] This section reads: "The executive department of this State shall consist of a Governor, Lieutenant Governor, Secretary of State, Treasurer of State, Auditor of State, and Attorney General, all of whom shall keep their offices in person at the seat of government and hold their offices for the term of two years and until their successors are elected and qualified, and the General Assembly may provide by law for the establishment of the office of Commissioner of State Lands."

[8] This section reads: "The judicial power of the State shall be vested in one Supreme Court, in circuit courts, in county and probate courts, and in justices of the peace. The General Assembly may also vest such jurisdiction as may be deemed necessary in municipal corporation courts, courts of common pleas, where established, and, when deemed expedient, may establish separate courts of chancery."

"There is hereby created a State Highway Commission which shall be vested with all the powers and duties now or hereafter imposed by law for the administration of the State Highway Department, together with all powers necessary or proper to enable the Commission or any of its officers or employees to carry out fully and effectively the regulations and laws relating to the State Highway Department."

The quoted language says that the State Highway Commission shall have charge of the "State Highway Department." So, if the Highway Department is not a subdivision of the Executive Department (as it is), then the People have created a fourth department of government. The People who adopted the Constitution in 1874 reserved the right to amend it; and if they wanted to create a fourth, fifth, or sixth department of government, they had and have the right to do so. And all such newly created departments would necessarily come within the purview of Article 19, Section 15, because an Amendment to the Constitution becomes a part of the whole document for the purpose of uniform construction. (Cooley on Constitutional Limitations, 8th Ed. p. 129.) So even if the Highway Department should not be a sub-department of the Executive Department (and that is what it is, just as the Bank Department,[9] the Insurance Department,[10] and other departments or branches are sub-departments of the Executive Department), still the use of the word "Department" in Amendment No. 42 would bring the officers of the Highway Department within the purview of Article 19, Section 15.

We held in *State Highway Comm.* v. *Nelson,* 191 Ark. 629, 87 S. W. 2d 394, that a suit against the State Highway Commission was a suit against the State. That Harry W. Parkin is an officer of the State cannot be gainsaid when his appointment was confirmed by the Senate as provided in Amendment No. 42; he took the Constitutional oath of office (Ark. Const. Art. 19, Sec.

[9] See §67-101 Ark. Stats.
[10] See §66-101 Ark. Stats.

20) ; and then also took the special oath of office required of State Highway Commissioners (§ 76-215 Ark. Stats.). So we conclude that Harry W. Parkin was a "member or officer of any department of the government" within the purview of the inhibition contained in Article 19, Section 15 of the Arkansas Constitution.

The appellant insists that by Act of November 28, 1874, the Legislature made a contemporaneous interpretation of Article 19, Section 15 of the Constitution, and that such contemporaneous construction should have great weight with this Court; and also that by other enactments over the years, the Legislature has made interpretations of this Constitutional provision. The appellant also insists that, over the years, the Executive Department has made interpretations of this Section 15 in that members of various Boards have dealt with the State, even in printing matters. The appellant argues that this Court should follow such Legislative and Executive interpretations, but we reject this argument of appellant. It is the duty of the Judicial Department to interpret the Constitution, and we cannot abrogate our duty by adopting interpretations made by either of the other Departments in conflict with plain language. Legislative and/or Executive interpretations are to be given consideration *only* when the Constitutional provision is ambiguous. (Cooley on Constitutional Limitations, 8th Ed. p. 149.) There is no ambiguity in the plain language which says: "No member or officer of any department of the government shall in any way be interested in such contracts . . ." The Constitution says what it means and means what it says, and we are sworn to follow it. The words of Chief Justice Hart in *Hargraves* v. *Solomon,* 178 Ark. 11, 9 S. W. 2d 797, are like a clarion call:

"We are not concerned with the wisdom or expediency of the provision of the Constitution under consideration. Our duty is to carry out the provisions of the Constitution as indicated by its plain language."

The appellant's second point is that the ". . . policy of Arkansas does not prohibit a member of the State Highway Commission from holding and performing printing contracts let by the Secretary of State in a procedure prescribed by law and including competitive public bidding." This second point becomes immaterial since all of the contracts must fall because of the Constitutional prohibition, and so the public policy argument becomes of no moment. Such was the view of the Chancery Court. We do, however, desire to specifically point out that in affirming the decree we are merely concerned with the items specified in Article 19, Section 15 of the Constitution. As regards items not contained in that section, and as concerns relationship of board members selling such other items, we call attention to our case of *Fiser* v. *Clayton,* 221 Ark. 528, 254 S. W. 2d 315, in which members of one board were permitted to sell to other agencies. That holding resulted from statutory enactment, as distinguished from the Constitutional prohibition here presented. There is not the slightest indication of any irregularity, over-reaching, or fraud in this case. The bids were publicly opened and read, and the Parkin Company was the low bidder; and the saving to the State on the Parkin bid over the next lowest bidder is estimated to be more than $28,000.00 for the biennium. Everything was honest and above-board; but as aforesaid it is not for us to substitute our views against the plain wording of the Constitution.

Finally, we come to the cross-appeal of the Arkansas Stationery & Furniture Company. It was the next lowest bidder on Contract No. 40 awarded to Parkin Company and claimed that since the Parkin bid was void, the State Officials should have awarded Contract No. 40 to Arkansas Stationery & Furniture Company. The prayer was that the State Officials be required to make such award. The Chancery Court was correct in denying the prayed relief, since a petition for mandamus in the Chancery Court was not the proper remedy. *Democrat*

*Printing & Lithographing Co.* v. *Parker,* 192 Ark. 989, 96 S. W. 2d 16; and *Consumers Co-op.* v. *Hill,* 233 Ark. 59, 342 S. W. 2d 657. With the Parkin contracts cancelled, there must be a new advertisement and submission of bids, and the Arkansas Stationery & Furniture Company will then have an opportunity to submit a bid.

Affirmed on direct and cross appeal.

SAM ROBINSON, Associate Justice, dissenting. In holding that the Highway Department is a part of the executive department of government within the meaning of Article IV, Sec. 1 of the Constitution, the majority has read something into the Constitution that is not there. The majority points to no provision of the Constitution nor to any decision that supports the view that the Highway Department is a part of the executive department. On the other hand, we have a constitutional provision and decisions construing it supporting the position that the Highway Department is not a part of the executive department.

Article IV, Sec. 1 of the Constitution provides that the government of the state shall be divided into three distinct departments—the legislative, the executive and the judicial. We are not left in the dark as to the parts of government included in each department. The Constitution is specific and tells us in clear language just what each department shall consist of. As to what constitutes the executive department, Article VI, Sec. 1 of the Constitution provides: "The executive department of this State shall consist of a Governor, Lieutenant Governor, Secretary of State, Treasurer of State, Auditor of State and Attorney General, all of whom shall keep their offices in person at the seat of the government and hold their offices for the term of two years and until their successors are elected and qualified, and the General Assembly may provide by law for the establishment of the office of Commissioner of State Lands."

Thus, in clear language, the Constitution sets out in detail the various offices of the state *that shall constitute the executive department, "all of whom shall keep*

*their offices in person at the seat of government" and ".hold their offices for a term of two years".*

The majority fails to point out just how the Highway Commissioners will be elected every two years and how the Highway Department is to keep its "offices *in person* at the seat of government". The Constitution in unambiguous language says the executive department shall consist of *a* Governor, Lieutenant Governor, Secretary of State, Treasurer of State, Auditor of State, Attorney General and Commissioner of State Lands and it may be fairly inferred that the secretaries, stenographers and office help of the members of the executive department constitute a part of that department, but the Constitution does not say that the Highway Department or the Highway Commissioners shall be a member of the executive department of government.

The majority suggests that if the Highway Department is not a part of the executive department, it is a fourth department of government by virtue of Amendment No. 42 to the Constitution. The answer to that is that the Highway Department was not created by the Amendment. It was created by Act 65 of 1929. It is an administrative agency of the Legislature just the same as the Public Service Commission is an administrative agency of the Legislature. In *City of Ft. Smith* v. *Department of Public Utilities,* 195 Ark. 513, 113 S. W. 2d 100, in speaking of the Department of Public Utilities, this Court said: "The Department is an administrative body created by the Legislature."

Likewise, the Labor Department is an administrative agency. In *Hickenbottom* v. *McCain, Commissioner of Labor,* 207 Ark. 485, 181 S. W. 2d 266, the Court stated that the Legislature, acting under its police power, had created a large number of governmental agencies and departments such as the Department of Labor, Banking Department, State Board of Education, Basic Science Board, Fish and Game Commission, and State Police Department. In the *Hickenbottom case* it is pointed out that the Governor, Secretary of State, Treasurer,

Auditor, Attorney General, Land Commissioner and Lieutenant Governor constitute the executive department of government. Nothing is mentioned about the above named departments or the Highway Department or the Highway Commissioners being a part of the executive department.

Our Constitution was adopted in 1874. Since that time many administrative agencies have been created and this is the first time this Court has held that any administrative agency of the state is a part of the executive department of the government. Certainly the fact that the governor appoints members of the Highway Commission does not make such members a part of the executive department, any more than the appointment of a judge by the governor would make such judge a member of the executive department.

Applicable here is the language of the Court in *Humphry* v. *United States,* 295 U. S. 602, 7 L. Ed. 1611, 55 S. Ct. 869. There, in speaking of the Federal Trade Commission the Court said: ''Such a body cannot in any proper sense be characterized as an arm or eye of the executive. Its duties are performed without executive leave and, in the contemplation of the statute, must be free from executive control.'' The same thing is true in the case at bar. Although the Highway Commissioners are appointed by the governor, their duties are performed without executive leave and in the contemplation of Amendment No. 42 they must be free from executive control.

Certainly the framers of the Constitution of 1874 did not intend that the prohibition in Article XVIV, Sec. 15 should apply to administrative agencies. In 1889, by Act No. 107 in respect to public printing, the Legislature treated ''the presidents of the several Boards of Trustees of the State's benevolent institutions at Little Rock and the president of the Board of Trustees of the State University at Fayetteville'' as administrative agencies separate and apart from the legislative, executive and judicial departments of government.

In *Oliver* v. *Martin,* 36 Ark. 134, the Court said: "The executive department of the state is *expressly defined* (our italics) by the constitution, Article VI, section 1. It consists of the governor, secretary of state, auditor, treasurer and attorney general. Subordinates in their several departments may be well enough said, also, to be of them." It cannot be said that any member of the Highway Department or any of the Commissioners is a subordinate in any of the offices making up the executive department. Neither the governor, Lieutenant Governor, Secretary of State, Auditor, Treasurer, Attorney General, or Land Commissioner have any authority whatever over the Highway Department. They can give no orders regarding that department.

In my opinion, the case of *Farrell* v. *Oliver,* 146 Ark. 509, 226 S. W. 137, is in point with the case at bar and cannot be distinguished in any reasonable manner. In the *Farrell case* the issue was whether "the Boys Industrial School" and "Girls Industrial School of the State of Arkansas" are a part of the executive department of government within the meaning of the constitution. The Court, speaking through Chief Justice McCulloch said: "The Constitution defines each of the separate departments of State government. Section 1 of article 6 defines the executive department in the following language: 'The executive department of this State shall consist of a Governor, Secretary of State, Treasurer of State, Auditor of State, and Attorney General, all of whom shall keep their offices in person at the seat of government * * *. . . . In the case of *Oliver* v. *Morton,* 36 Ark. 134, it was held that 'the executive department of the State is expressly defined by the Constitution, article 6, section 1. It consists of the Governor, Secretary of State, Auditor, Treasurer and Attorney General.' "

Judge McCulloch also said: "The definition is broad enough, as was said in *Oliver* v. *Morton,* supra, to embrace subordinates in the several departments, *but by no reasonable stretch of the language can it include*

*charitable institutions created by the Legislature and placed under the management of boards created for that purpose."* (our emphasis).

If the Boys and Girls Industrial Schools are not a part of the executive department within the meaning of the Constitution, to paraphrase Judge McCulloch's language in the *Farrell case,* by no reasonable stretch of language can the Highway Department be classified as a part of the executive department.

The case of *Fiser* v. *Clayton,* 221 Ark. 528, 254 S. W. 2d 315, disposes of the public policy question. Section IV of Act 214 of 1943 provided: "Neither the Comptroller nor any member of his department, nor any officer, agent, or employee of any agency of the State making purchases shall be financially interested or have any personal beneficial interest, directly or indirectly in any contract or purchase order for any supplies, materials, equipment used by or furnished to any department or agency of the State Government."

In respect to the 1943 Statute this Court in the *Fiser* case said: "We dispose of the cases by holding that the language of § 4 is not sufficiently clear to justify us in saying that the legislative intent was to prohibit the member of one board or commission, officer, agent, or employee, from consummating commercial or business transactions with another agency; therefore there was nothing tangible to prohibit." The Court also said: "Here we find the policy-declaring power operating directly and through express language upon members of the highway commission; but nowhere is there a suggestion that a commissioner shall not own stock in a corporation or be interested in an enterprise that sells to another department of the state."

For reasons set out herein, I respectfully dissent.

JIM JOHNSON, Associate Justice, dissenting. I dissent. In my opinion the majority is, by judicial decree, giving the Constitution of the State of Arkansas a meaning never dreamed of by the framers of that great and sacred document. Often when I disagree with the majority view. I

am content to merely register a dissent, but in cases involving fundamental principles of constitutional law, my conscience will not permit me to remain silent. This is such a case.

In this case, the majority has declared the contracts involved to be void on the basis of a provision of Article 19, Section 15, of the Constitution of the State of Arkansas, which, according to the majority, "says what it means and means what it says." This provision does not say and mean to me what it says and means to the majority; it has not said and meant to those in the Executive and Legislative branches over the last eighty-eight years what it says and means to the majority; and in my opinion, it did not say and mean to its adopters what it says and means to the majority. It is easy to say that particular words are not ambiguous when read in isolation, but different words mean different things to different people, and, in different contexts the same words mean different things to the same people at different times. While it is the authority and duty of this Court to interpret the Constitution, it is, or should be, the purpose of the Court to arrive at the intended meaning of the adopters of the Constitution and to interpret the provision in accordance with that intended meaning regardless of what we now think the particular words mean. We should consider all relevant evidence, such as authoritative and well established legislative and executive expressions and interpretations, and give all relevant evidence such weight as the circumstances warrant. By so proceeding, we clearly would not be abrogating our duty, *we would be discharging it.* I realize that the adopters of the Constitution may have intended that certain provisions must apply to developments of the future not necessarily envisioned by them, and the Court should give effect to this intention when it is found to have existed. However, we should go no further in such flexible interpretations than to accomplish the obvious and fundamental purpose of the particular constitutional provision. And, *it has been repeatedly pointed*

*out that provisions in the nature of a penalty should be strictly construed.*

As pointed out by the majority, there are two sentences in Article 19, Section 15. While there have been several cases before this Court dealing with the particular section, we have never been called upon to construe the provisions of the second sentence which are directly involved in this case. It is interesting to note that the first sentence would appear to call for legislative implementation because the requirement is for contracts to be given to the lowest responsible bidder "below such maximum price and under such regulations as shall be prescribed by law". Thus, at least this much of the section would appear *not* to be self-executing. See *Griffin* v. *Rhoton,* 85 Ark. 89, 107 S. W. 380; *Myhand* v. *Erwin, County Judge,* 231 Ark. 444, 330 S. W. 2d 68. There is no such express qualification with reference to the second sentence, therefore it is clear that the entire section is to be read together because there is a reference in the second sentence to "such contracts" and there can be no question but that the adopters of the Constitution understood and contemplated that the Legislature could act in this field. In view of this, *it is all the more obvious that this Court should pay particular attention to expressions of the Legislature.* In this regard, this Court has repeatedly held that the Legislature may enact implementing legislation even in the case of self-executing constitutional provisions and, when not repugnant to the Constitution, the provisions of the statute must be followed. See, among other cases, *Myhand* v. *Erwin, supra.*

I have examined this matter as thoroughly as it is humanly possible for me to do and cannot escape the conclusion that under the Constitution as written the contracts involved, are valid. My reasons are as follows:

1. We should go no further than is necessary to dispose of the issues in this case. In this regard, the sole question is whether the fifteen contracts involved are void because Mr. Harry W. Parkin, the President

and a stockholder in Parkin Printing and Stationery Company, is, and at all pertinent times was, a member of the State Highway Commission. All legal requirements prerequisite to and in connection with the awarding and execution of the contracts have been met and complied with and, on the basis of a comparison with the next lowest bidder, the performance of the contracts by Parkin Printing and Stationery Company, would result in savings to the State in excess of $28,000. The contracts were awarded after competitive bidding and are between Parkin Printing and Stationery Company and the Secretary of State. *Specifically, the contracts are not with the State Highway Commission.*

2.  The fundamental purpose of Article 19, Section 15 (both sentences) is to protect and enhance the public economy. *Woodruff, Ad.* v. *Berry, et al,* 40 Ark. 251. While it was intended that members or officers of the departments of government were not to be connected with such contracts (the applicable provision says interested in) in such a manner as to interfere in any way with the full realization of that fundamental purpose, we should interpret the provision no broader than is necessary to accomplish the desired purpose, because it is clearly a penalty or prohibitive provision. See *Fiser* v. *Clayton, State Treasurer,* and *Clayton, State Treasurer* v. *McAmis,* 221 Ark. 528, 254 S. W. 2d 315, where this Court stated, at page 536:

"It has long been the rule that penal statutes and statutes which impose burdens and liabilities unknown at common law must be strictly construed in favor of those upon whom the burden is sought to be imposed, and nothing will be taken as intended that is not clearly expressed."

While a statute was involved in the *Fiser* case, *supra,* the general principle is certainly applicable in this situation.

3.  The interpretation of the particular provision of Article 19, Section 15 to include only the departments of government referred to elsewhere in the same docu-

ment (Constitution of 1874) will not only be consistent with the full realization of the purpose involved, it will enhance it. Furthermore, to me this interpretation is clearly the one intended by the adopters of the Constitution. Article 4 is entitled "Departments", and Section 1 provides in effect that the powers of the government shall be divided into three distinct departments, legislative, executive and judicial. Section 1, Article 5 provides that the legislative power is vested in a General Assembly, consisting of the Senate and House of Representatives. Section 1, Article 6 provides that the executive department consists of a Governor, Secretary of State, Treasurer of State, Auditor of State and Attorney General, and authorizes the establishment of the office of Commissioner of State Lands. The office of Lieutenant Governor was added to the executive department by constitutional amendment adopted in 1927 in which the people repeated the provisions of Section 1, Article 6. Section 1, Article 7 provides that the judicial power is vested in one Supreme Court, in Circuit Courts, in County and Probate Courts, and in Justices of the Peace. There is authority for the Legislature to vest jurisdiction in municipal corporation courts, courts of common pleas, and to establish separate courts of chancery. In the same document, the adopters provided in Article 19, Section 9 that the General Assembly shall have no power to create any permanent state office not expressly provided for by the Constitution. Therefore, in view of the prohibitive provision involved and the purpose to be accomplished, it appears crystal clear to me that a proper interpretation of the intended meaning of the adopters of the Constitution of this provision of Article 19, Section 15 is that only members and officers of the departments described above are prohibited from being interested in such contracts. If they had intended subsequent offices, boards and agencies, other than those defined as departments in the Constitution, they had the language at their command to do so. See for example the broader language appearing in the following: Section 10, Article 3 ("any office, appointment or·employ-

ment in or under the government of the United States, or of this State''); Section 7 Article 5 (''nor any other person holding any lucrative office under the United States or this State (militia officers, justices of the peace, postmasters, officers of public schools and notaries excepted)''); Section 10, Article 5 (''any civil office under this State''); Section 11, Article 6 (''person holding office under the authority of this State, or of the United States''); Section 22, Article 6 (''any other office or commission, civil or military, in this State or under any State, or the United States, or any other power''); Section 10, Article 7 (''holding any other office, nor hold any office of trust or profit under the State or the United States''); Section 18, Article 7 (''any other office of trust, or profit under this State or the United States''); Section 1, Article 19 (''any office in the civil departments of this State''); Section 2, Article 19 (''any office in the State''); and Section 3, Article 19 (''vacancy in any office'').

The exact language used in the provision of Article 19, Section 15, with which we are concerned, when considered in the light of precise definition of that exact language elsewhere in the same document, in the light of an express provision in Article 19, Section 9 limiting the authority of the Legislature to create additional permanent offices, in the light of the broader language used in numerous places elsewhere in the same document when a broader interpretation was obviously intended, and in the light of the purpose involved, makes the intended meaning of the adopters perfectly plain. *They did not intend the penalty or prohibitive provision to apply to members or officers of subsequently created offices, boards or commissions whether or not they might, for other constitutional purposes, be properly characterized as falling within one of the three branches of government or within a combination thereof.* This result is consistent with the restrictive interpretation called for and is consistent with the legislative, executive and general interpretation over the eighty-eight

year period since the adoption of the Constitution of 1874. Furthermore, the interpretation results in the realization of the purpose involved.

There is nothing novel about this interpretation which, incidentally, the majority opinion describes as an adroit argument. In *Farrell* v. *Oliver,* 146 Ark. 599, 226 S. W. 529, this Court placed an identical interpretation upon the same words. There was involved Article 5, Section 30 of the Constitution which provides:

"The general appropriation bill shall embrace nothing but appropriations for the ordinary expense of *the executive, legislative and judicial departments* of the State. All other appropriations shall be made by separate bills, each embracing but one subject." (Emphasis supplied).

In that case there was involved an appropriation for the Boys' Industrial School of the State of Arkansas and the Girls' Industrial School of the State of Arkansas. The appropriations for the maintenance of the institutions were embraced in the general appropriation bill and this was attacked on the grounds that a separate appropriation was required by the Constitution. The Attorney General defended on the ground that the Constitution divided the powers of the state government into three distinct departments and that all of the institutions of the State, including the schools, must be classified as part of the executive branch of the government. The Court pointed out that while all governmental activities must necessarily fall into one of the three classes, it did not follow that the Legislature intended that appropriations for departments that might for other or general purposes be classified as executive be included in the general appropriations bill. The constitutional definitions of the three departments of government, set forth above, were referred to by the Court and, in holding that the provisions of Article 5, Section 30 referring to the "executive, legislative and judicial departments" meant those departments as defined in the Constitution, the Court said:

"It is, in other words, *an appropriation for the departments of State government* and must therefore be read in the light of the definition given by the Constitution as to what constitutes those departments. . . . The control of such institutions is administrative and falls within the executive powers of government, *but the control and maintenance is not a part of the expenses of the executive department of State as defined by the Constitution.*" (Emphasis supplied).

Following this rule in the case at bar and recognizing that the State Highway Commission did not come into existence until many years after the adoption of the Constitution of 1874, and was not a department of government as defined in that document within the meaning of Article 19, Section 15, the prohibitive provision involved could not possibly apply to a member of the State Highway Commission.

The majority opinion completely ignores our holding in *Farrell* v. *Oliver, supra.* In my opinion, this case cannot be ignored and it cannot be distinguished. It is our duty to either overrule the holding in that case or follow it in the case now before us and thereby reverse the holding of the trial court.

It is inconceivable to me that all the members of the executive and legislative departments (including hundreds of the most able lawyers in the history of our State) could have been wrong in their interpretation of the Constitution of 1874 for these eighty-eight years.

Governor Cherry, who had served as a Judge for many years and was recognized as an able lawyer surely saw no inhibition in the Constitution to his appointment of Miss Willie Lawson to the first State Highway Commission organized under the Mack-Blackwell Amendment in 1953. Miss Willie Lawson, a highly respected and able citizen, for practical purposes stood in the same shoes then that are occupied by Mr. Harry W. Parkin today. Miss Lawson's position was with the Democrat Printing and Lithographing Company,

whereas Mr. Parkin's position is with the Parkin Printing and Stationery Company. Neither did Governor Cherry recognize any inhibition in the Constitution of 1874 that would prohibit his appointing Mr. Cecil Lynch, an officer of the Arkansas Power and Light Company, to serve as a member of the first Highway Commission organized under the Mack - Blackwell Amendment in 1953. No one can question that the Arkansas Power and Light Company at that time sold, and still sells, fuel to the State of Arkansas. Electricity is but one form of fuel. Article 19, Section 15 applies to fuel the same as it does to printing. Someone may say that electric rates are regulated by the Public Service Commission, but this is not the end of the story. Remember, the Highway Commission would have to vote to determine whether a building to be occupied by that agency is to be air conditioned with electricity or by the use of natural gas, butane, or some other fuel. Also, the Commissioners may be called upon to vote on the issue of whether, under certain circumstances, the Highway Commission should purchase its own generators and manufacture its own electricity by the use of natural gas or some other form of fuel. The same situation involved Mr. Lawrence Blackwell when he was appointed to succeed Mr. Lynch. Mr. Blackwell served at that time as a member of the Board of Directors of Arkansas Power and Light Company. I had the privilege to serve with Mr. Blackwell in the Senate at the very time he sponsored the Mack-Blackwell Amendment. Mr. Blackwell is a lawyer of recognized ability and certainly I cannot believe that it ever occurred to him that he was disqualified by this provision of the Constitution from serving as a member of the Highway Commission even though he served also as a member of the Board of Directors of the Arkansas Power and Light Company, a company which was engaged in selling fuel to the Highway Commission, other state agencies and to the Constitutional departments of the state government. For fear, however, that someone will try to distinguish the

facts that involved Mr. Lynch and Mr. Blackwell on the ground that the electric rates are fixed by the Public Service Commission, I point out that the printing rates involved in the contracts here in question were developed by competitive bidding and were approved by the Secretary of State, Auditor, Treasurer and Governor, all of whom must answer to the voters at the polls if there is any wrongdoing.

Where does the majority opinion lead us in the future? Where will the line be drawn? There is no question but that the majority opinion means that no officers or stockholders of a gas or electric utility (their parent, companion or subsidiaries) which serve the State of Arkansas can serve on any board or commission. It also means that any officer or stockholder of an oil company or subsidiary of such company which sells gasoline, oil, or any other form of fuel to the State of Arkansas cannot serve on any board or commission. The state government cannot cut off the electricity, natural gas, the use of gasoline, motor oils and other fuels and this, under the majority view, leaves one alternative, stockholders and officers of such suppliers are disqualified from serving the state on any board or commission.

4. Public policy can be declared by the Legislature and in proper cases by the Court. In this regard, the public policy in this area is clear. In the face of rather plain statutory language prohibiting any officer, agent or employee of any agency from being financially interested, directly or indirectly, in any contract or order for any supplies, etc. furnished to any department or agency of the government, this Court in the *Fiser* case, *supra,* in furtherance of the applicable restrictive approach concluded that it was not justified in finding a legislative intent to prohibit a member of one board or commission from consummating business transactions with another agency. The conclusion of the Court was confined to the precise issue before it involving the transaction of business by the member of one board with another board. Aside from judicial declaration, the Leg-

islature has conclusively determined the public policy applicable to the exact issue involved. The Mack-Blackwell Amendment No. 42 itself clearly contemplates legislative implementation. In Section 1 the language is that a Highway Commission is created to be "vested with all the powers and duties now or hereafter imposed by law" and all powers "to carry out fully and effectively the regulations and laws relating to the State Highway Department". This amendment was adopted at the general election held November 4, 1952. At the next session of the Legislature starting in January 1953, Senator Blackwell was an author and sponsor of the bill that became Act 329 of 1953, and obviously was intended to cover the precise issue involved. This Act deals with beneficial interests and prohibitions and makes it unlawful for any Commission member to sell to the Agency of State with which he is connected "except in instances in which the *price* of such goods . . . is fixed by law or by an agency of government with which he is not connected, or in which the *price* of such goods . . . *is fixed by a contract let by another agency of state.*" (Emphasis supplied). In the general area of state agency purchasing, see Act 313 of 1955 in which substantially the same language appears as is employed in Act 329 of 1953. The matter of whether Act 329 of 1953 has been repealed is immaterial because it and Act 313 of 1955 represent express legislative declaration of public policy and for that matter Act 329 of 1953 represents express legislative implementation in the exact field covered by the issue before the Court. Here, by virtue of Act 171 of 1921, the Secretary of State is the agency of state letting the contract which fixes the price of the goods going to the State Highway Commission. If not binding, certainly the legislative action should at least be highly persuasive as to the interpretation to be made by this Court. Therefore, the existing public policy in this field applicable to all state offices, boards and agencies is that a member of one office, board or agency can sell to his own agency if the price (not quantity or quality) is fixed by contract let by

another agency of state. Compliance with this policy protects the State and the public from loss (or protects the public economy) and at the same time permits maximum competitive bidding and the full utilization of the most qualified persons eligible for appointment to public positions. If there is any actual wrong doing, the checks and controls inherent in our accounting techniques, inspections and procedures will bring them to light for appropriate action. Thus, the language ''no member or officer of any department of the government shall in any way be interested in such contracts'' in Article 19, Section 15, should properly be limited in its application to at least contracts directly with the agency of which the officer involved is connected. Such an interpretation approving these contracts is consistent with the full realization of the public purpose involved, permits maximum competitive bidding, and permits the State to obtain for its over six hundred board and agency positions the best qualified persons, without unnecessary exclusion from the ranks of those eligible for appointment.

Therefore, regardless of the approach taken, the only proper conclusion is that, under the facts in this record, the contracts in question are not void by virtue of the provisions of Article 19, Section 15 of our Constitution. To the majority opinion to the contrary, I dissent with all the vigor at my command.