JENNINGS *v.* LYNCH.

5-1336                                  307 S. W. 2d 781

Opinion delivered December 16, 1957.

*Kenneth Coffelt,* for appellant.

*W. R. Thrasher* and *Dowell Anders,* for appellee.

PAUL WARD, Associate Justice. Cecil Jennings and others, all citizens and taxpayers living in the vicinity of Norfork Lake, Baxter County, filed a complaint

against Cecil Lynch and the other members of the Arkansas Highway Commission, on May 4, 1956, wherein they asked the Chancery Court of Pulaski County to direct the said Commission to construct a road from "Mountain Home across Norfork Dam, and through the rock bluff at the Norfork Dam . . ., and on to Elizabeth," and also to relocate and reconstruct State Highways 62 and 101 in certain particulars therein set forth.

A short statement of back ground facts will make it easier to understand the issues involved. Norfork River, prior to 1941, ran in a southerly direction through Baxter County and emptied into White River near the town of Norfork. There was a bridge across the Norfork River at the small town of Henderson which was located about 9 or 10 miles south of the Missouri line and about 10 miles north of the present location of the Norfork Dam. In 1941 the U. S. Government began acquiring land preparatory to constructing the said dam and the attending reservoir. It was known at the time, of course, that the reservoir would inundate the Henderson bridge.

On May 29, 1943 the U. S. Government filed a suit No. 106, in U. S. District Court, Western District of Arkansas, Harrison Division, in which it declared the taking of the necessary land for the dam site and the reservoir, including the bridge and a portion of State Highway 62, which ran east and west across the Henderson bridge and a portion of Highway 101 which ran from the Missouri line and joined Highway 62 near the bridge.

After the dam was completed the water gates were closed on June 17, 1943, and by October of that year the Henderson bridge and adjoining portions of Highways 62 and 101 were inundated. This necessitated the installation of an expensive ferry at Henderson to cross the lake. The dam was designed and constructed in such a way that it could be used as a bridge. The only reason, apparently, why it is not and has not been used as a bridge is that it runs into a high rock bluff on the east side. Also, due to said bluff, the roads have not been constructed up to the dam on either side.

As we understand it, appellants instituted and now maintain this litigation on the general theory that the Arkansas Highway Commission is legally obligated to re-route highways 62 and 101 so as to go over the dam, necessitating the removal of the stone bluff at the east end of the dam. As was held in *Paving Districts Nos. 76 and 52 of Pine Bluff* v. *State Highway Commission,* 186 Ark. 68, 52 S. W. 2d 623, it is apparently admitted by appellants that, ordinarily, constructing and routing highways are matters of discretion with the Highway Commission and not subject to control by mandamus.

If, as appellants contend, there rests upon the Highway Commission an obligation in this case to construct specific roads and locate them in definite places and if this obligation is such as can be enforced by mandatory injunction, then it becomes necessary to determine how this obligation arose. This, we think, appellants have failed to point out. However we discuss below the only grounds or methods suggested by appellants.

*First,* it is appellants' contention that when the Arkansas Highway Commission accepted the money from the U. S. Government which was assessed as damages in the condemnation proceedings (case No. 106) referred to above, it did so as trustee for the people for the express purpose of building a road across the dam. We do not agree with appellants' interpretation of the condemnation proceedings. It would serve no useful purpose to set out these proceedings and discuss them in detail, because we think their purpose and effect are obvious and may be briefly stated. In so far as relates to this opinion, the sole object of the condemnation proceedings and the sole effect of the court order was to fix the amount of damages the U. S. Government should pay to the State of Arkansas and the Highway Commission for inundating and destroying certain roads and the Henderson bridge. In arriving at this amount it was deemed pertinent to determine the cost of replacement, i. e., building substitute roads and bridges to take care of the east and west traffic. Before the replacement cost could be estimated it was, of course, necessary to try and determine the most feasible plan of

replacement. In all, six different plans were considered, and one of these was to use the dam for a bridge. It was upon this last plan that the agreement was reached and upon which the court (in case No. 106) fixed the damages. It appears clear to us, from an analysis of the language used in the court order and the settlement agreement, that the plan to use the dam as a bridge amounted to nothing more than a feasible method of determining damages, and that it did not legally bind the Highway Commission to follow that plan later in the expenditure of the money. Certainly no language to that effect appears in the record of case 106 shown in the record.

*Secondly*, appellants make the argument that Act 52 of 1945 obligated the Highway Commission to spend the money (received for damages) to relocate the Highways over Norfork Dam. However, reference to the language of this act fails to reveal any substantiation of appellants' argument. Section 1, after referring to the funds received by the Highway Commission in connection with the Norfork Dam condemnation proceedings, uses this pertinent language:

". . . they are hereby irrevocably allocated and pledged to the construction and reconstruction of roads and bridges and ferry operation in the Norfork Dam area found necessary to replace the roads and bridges destroyed or rendered useless by reason of the building of the Norfork Dam by the Federal Government." Section 2 of said Act reads:

"Any citizen and taxpayer in the State of Arkansas shall have the right to restrain any diversion of said funds or interest derived therefrom from these purposes by proceedings filed in the Pulaski Chancery Court." If it be conceded for the purpose of this opinion that the legislature had the right to force the Highway Commission to construct a highway across the dam, and if it be conceded likewise that appellants have a right to maintain this suit against the Commission, still it used no such directive language in Act 52. Moreover, it appears that the legislature has long ago abandoned any

intention it may have expressed by the passage of said Act 52 to direct the use of the condemnation money by the Highway Commission. Exhibit No. 5, in the record, shows that the Highway Commission had, by 1950, spent on the ferry at Henderson and the roads in the vicinity of the dam as much money as it received from the U. S. Government. It appears now that the legislature took cognizance of the above mentioned situation. By Act 175 of 1947 and Act 361 of 1949 the legislature carried forward, in effect, the directive language copied above from Act 52 of 1945, but Act 178 of 1951 which dealt with funds of the same nature omits the directive language above mentioned, and such language has not since been reenacted.

From the above it follows that the decree of the trial court dismissing appellants' complaint must be and it is hereby affirmed.

Affirmed.

McFADDIN, J., concurs.

ED. F. McFADDIN, Associate Justice (concurring). I concur in the final result reached by the majority in this case. I never considered the points discussed in the majority opinion because, as I see it, this entire proceeding by Jennings *et al.*, appellants, is a suit against the State of Arkansas and cannot be maintained because of Article V, Section 20 of our Constitution, which reads: ''The State of Arkansas shall never be made defendant in any of her courts.''

We held in *Pitcock* v. *State,* 91 Ark. 527, 121 S. W. 2d 742, 134 Am. St. Rep. 88, that this constitutional immunity could not be waived by legislative enactment; and in *Watson* v. *Dodge,* 187 Ark. 1055, 63 S. W. 2d 993, we held that any proceedings, either in law or inequity, which had the purpose and effect, directly or indirectly, of coercing the State, is a suit against the State. In *Caldwell* v. *Donaghey,* 108 Ark. 60, 156 S. W. 2d 839, 45 L. R. A. N. S. 721, Ann. Cas. 1915B 133, we held that the State of Arkansas could not be sued for specific performance; and in *Arkansas State Highway Comm.* v. *Nelson Bros.,* 191 Ark. 629, 87

S. W. 2d 394, we held that a suit against the State Highway Commission was a suit against the State of Arkansas. In view of these holdings, it is clear to me that the present suit by Jennings *et al* is a suit against the State of Arkansas. The only persons sued were the members of the State Highway Commission, and they were sued in their official capacity as State Highway Commissioners. The real purpose of the suit was to compel the State Highway Commission to build a road according to what the plaintiffs alleged was the agreement that the State made with the United States Government. It is clearly a suit against the State, and cannot be maintained.

Act 52 of 1945 affords these appellants no relief. If they desired to enjoin the disbursement of money, they should have sued the disbursing officers rather than the State Highway Commission. Furthermore, the Act 52 of 1945 was materially changed by subsequent enactments, such as Act 175 of 1947, Act 361 of 1949, and Act 178 of 1951.

I have considerable sympathy for the appellants. Some of them live in the vicinity of Jordan, east of the North Fork River and about three miles east of the Norfork Dam. According to the map presented in oral argument, State Highway No. 178 runs from Mountain Home to Salesville School and there intersects State Highway No. 177, which goes from the Town of Norfork to the east side of Norfork Dam. The settlement of Jordan is east of the North Fork River; it is only about three miles from Jordan through Lakeview Courts to the east side of the Norfork Dam; and there is already an unimproved road along most of the route. The State Highway Commission could improve this local road from Jordan and provide access to the east side of Norfork Dam; and thereby afford these appellants a road such as they are seeking. I think this should be done; but that is a matter for the State Highway Commission, which cannot be compelled to so act by this Court since the Constitution forbids a suit against the State.

For the reasons stated, I concur in the result in this case.