## Honorable Frank WHITE, Governor and Raymond PRITCHETT *v.* H. T. HANKINS

82-39                                   637 S.W.2d 603

Supreme Court of Arkansas
Opinion delivered July 19, 1982
[Rehearing denied September 13, 1982.]

*Steve Clark,* Atty. Gen., by: *Frederick K. Campbell,* Asst. Atty. Gen.; *Thomas B. Keys* and *Christopher O. Parker,* for appellants.

*Pickens, Boyce, McLarty & Watson*, by: *James A. McLarty*, for appellee.

FRANK HOLT, Justice. The issue in this case is whether the appellant Governor Frank White's appointment of appellant Raymond Pritchett, confirmed by the senate, to the Arkansas State Highway Commission was contrary to Amendment 42, Ark. Const. (1874), which provides "that no two Commissioners shall be appointed from any single Congressional District." Shortly after the appointment appellee sought a declaratory judgment that Patsy Thomasson, an existing member of the Commission, and Raymond Pritchett were both residents of Pulaski County or the same Congressional District. The appellee later filed a motion for summary judgment together with a discovery deposition of Thomasson, a copy of her voter registration card from Cleveland County, an affidavit showing the exercise of her voting rights in that county, her appointment showing her address as Rison, Cleveland County, maps showing the existing Congressional Districts (6) when Amendment 42 became effective in 1952, and the present Congressional Districts (4) following the 1970 census. The appellee took a voluntary nonsuit as to Thomasson. The appellants resisted the motion for summary judgment alleging that factual matters remained in dispute and a hearing on the merits was necessary. Also, they sought dismissal of the action. The trial court granted appellee's motion for summary judgment, holding that Pritchett and Thomasson were both residents of Pulaski County, which is located in the old (1951) Fifth Congressional District; therefore, Pritchett's appointment is null and void inasmuch as it contravenes Amendment 42 which was enacted in 1952. The court considered the Congressional Districts, six in number in 1951, "frozen" by that amendment. Hence this appeal.

Appellants first contend the appellee lacked standing to bring this action as he has shown no injury in fact nor alleged grounds sufficient to show he is the proper party to bring this action. Appellee's complaint states: "The Plaintiff claims standing to seek this declaration as a citizen and taxpayer of the state and as a resident of Northeast Arkansas who is now deprived of representation on the Arkansas State

Highway Commission as a result of Governor White's appointment of Raymond Pritchett to that body." He further alleged that he was a resident of Independence County which placed him in the old (1951) Second Congressional District and that he (his Congressional District) is without representation. He did not allege nor does he contend that he is entitled as a matter of right or law to have a Commissioner from his Congressional District — he merely argues that he has standing as a citizen and taxpayer to object to the improper appointment of Pritchett. The trial court agreed stating that as a taxpayer, appellee had a right pursuant to Art. 16, § 13, Ark. Const. (1874), to challenge the appointment of Pritchett, who, as a Commissioner, would be responsible for spending tax dollars levied on the people of this state. Art. 16, § 13 provides:

> Any citizen of any county, city, or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever.

In *Green* v. *Jones*, 164 Ark. 119, 261 S.W. 43 (1924), we held that under Art. 16, § 13, that each citizen and taxpayer has an interest, where his pecuniary or property rights are involved, in seeing that no administrative board shall discharge its duties in a manner violative of the statute creating it. We feel this reasoning is applicable here. It is clear that the State Highway Commission is entrusted with the authority and responsibility, among other things, of spending large sums of state funds. Therefore, the trial court correctly held that appellee has standing to challenge the appointment.

We next consider and agree with appellants' contention that the trial court erred in holding that Amendment 42 requires selection of highway Commissioners on the basis of the 1951 Congressional Districts. The trial court's interpretation of Amendment 42 would require a finding that it was intended to "freeze" the six 1951 Congressional Districts as the relevant boundaries for the selection of Highway Commissioners. Amendment 42 § 2 provides:

Within ten days after the convening of the General Assembly of the State of Arkansas in the year 1953, the Governor, by and with the advice and consent of the Senate, shall appoint five persons who are qualified electors of the State to constitute the State Highway Commission . . . . The Commissioners to be appointed from the State at large; provided, however, that no two Commissioners shall be appointed from any single Congressional District.

The Highway Commission established by Amendment 42 is, in a large measure, patterned after the Game and Fish Commission which was established by Amendment 35. Both use Congressional Districts as a criterion in the selection of Commissioners. Congressional Districts are known to change with population fluctuation, and their use insures a periodically updated rough balance of population and geographical considerations. In construing a similar provision in Amendment 35, which is self-executing as is Amendment 42, we said in *Drennen v. Bennett, Atty. General*, 230 Ark. 330, 322 S.W.2d 585 (1959):

In the oral argument before this Court, appellant made the contention — not contained in the pleadings —that when Amendment No. 35 was adopted in 1944 it 'froze' the Congressional Districts insofar as the Amendment No. 35 was concerned. That is to say, appellant argued that the words, 'Each Congressional District must be represented on the Commission', meant that each Congressional District *as Congressional Districts were constituted in 1945* must be represented on the Commission. We think such contention is unsound for at least two good reasons of statutory construction.

In the first place: constitutional provisions operate prospectively and do not operate retrospectively unless the language used or the purpose of the provision indicates that such operation was intended (16 C.J.S. 121). If the framers of Amendment No. 35 had intended to say what the appellants now claim, then the framers of the Amendment would have said, 'Each Congres-

sional District *as now constituted* must be represented on the Commission'. The failure to place the italicized words in the Amendment shows the fallacy of the appellants' argument.

Secondly: we know that when Amendment No. 35 was adopted, there had been, theretofore, a series of Acts changing the Congressional Districts in Arkansas; and if the framers of the Amendment had intended that the Congressional Districts could not be changed, insofar as Amendment No. 35 was concerned, they would have been obliged to say so. By the Act of January 3, 1853, Arkansas was divided into two Congressional Districts; by the Act of April 24, 1873, there were four Congressional Districts; by the Act of March 23, 1883, there were five Congressional Districts; by the Act of April 9, 1891, there were six Congressional Districts; and by the Act of May 23, 1901, there were seven Congressional Districts. So, with a long history of changes in Congressional Districts, it was certainly clear that Congressional Districts would continue to be changed as population requirements rendered such changes necessary or advisable. So the Amendment No. 35 did not 'freeze' the Counties comprising the various Congressional Districts.

We feel this reasoning is controlling here and hold that Amendment 42, § 2, did not "freeze" the Congressional Districts as they existed in 1951, but rather it reflects a method and desire of the framers to insure equal representation of the Highway Commission from all parts of the state with an odd number (to avoid tie votes) constituting that membership. Historically, they were aware of the fluctuation in the number of Congressional Districts following each census or every ten years. If they had intended that the Congressional District boundaries be inflexible, even though they historically change, the drafters could have said so or used another method such as dividing the state into geographical areas, which would not be subject to changing boundaries. Arkansas presently has four Congressional Districts and five Highway Commissioners. As the legislature has recently recognized, it would be impossible to

comply strictly with § 2 of Amendment 42 requiring that no two members be from the same district, inasmuch as two members of the Commission would certainly have to be residents of the same district. See Ark. Stat. Ann. § 76-201.1a (Repl. 1981) and the preamble of the Act. We take judicial notice of the fact that as the present Commission is constituted all four districts are represented regardless of whether Thomasson is considered to be from Pulaski or Cleveland County. The prohibition against two members serving from the same district cannot control here; that provision, of course, is not stricken and will be effective if Arkansas were to have five or more Congressional Districts.

Since one district of the present four Congressional Districts must always have two of the five members of the Commission, it is irrelevant whether Thomasson is or is not a qualified elector from Pulaski or Cleveland County. Therefore, the appointment of appellant Pritchett is permissible.

Reversed and dismissed.

PURTLE, J., concurs.

HAYS, J., dissents.

JOHN I. PURTLE, Justice, concurring. I concur in the results reached by the majority but for a different reason. The language relating to the qualifications and appointment of members of the State Highway Commission is found in § 2 of Amendment 42 to the Constitution of the State of Arkansas. The language is as follows:

> Within ten days after the convening of the General Assembly of the State of Arkansas in the year 1953, the Governor, by and with the advice and consent of the Senate, shall appoint five persons who are qualified electors of the State to constitute the State Highway Commission for terms of two, four, six, eight and ten years respectively. The terms of the persons so appointed shall be determined by lot. The Commissioners to be appointed from the State at large; provided,

however, that no two Commissioners shall be appointed from any single Congressional District . . .

The language above-quoted is clear and simple to the effect that no two commissioners shall be appointed from any single congressional district. At the time Amendment 42 was adopted and went into effect, the state had six congressional districts. Therefore, there was no problem in appointing five members with no two being qualified electors of the same district. The same would hold true when the state was reduced to five congressional districts following the 1960 federal census. However, it was not known, and could not reasonably have been anticipated, that in 1970 the state would be reduced to four congressional districts. When the state was reduced to four districts then it was no longer possible to comply with the mandatory requirement that no two commissioners should be qualified electors of the same district. Therefore, it is obvious to me that the intent of the wording in the amendment was to freeze the number of districts at six. By giving Amendment 42 this interpretation it becomes obvious that there would never be a conflict with having more commissioners than there were congressional districts.

It is argued that Amendment 35 was the same type of amendment relating to the Game and Fish Commission. The qualifications in Amendment 35 are as follows:

Commissioners shall have knowledge of and interest in wildlife conservation. All shall be appointed by the Governor. The first members of the Commission shall be appointed by the Governor for terms as follows: one for one year, one for two years, one for three years, one for four years, one for five years, one for six years and one for seven years. Each Congressional District must be represented on the Commission.

From a plain reading of Amendment 35 it would not matter how many congressional districts existed in the state of Arkansas, so long as there were no more than seven and that each district would be represented on the commission. There is no prohibition against more than one commis-

sioner residing in the same district. This subject was treated in the case of *Drennen* v. *Bennett, Attorney General,* 230 Ark. 330, 322 S.W.2d 585 (1959). The complaint in that case alleged that one district did not have a representative on the Game and Fish Commission. However, Dr. J. H. Burge of Lake Village was serving as a member at large and resided in the district which claimed not to have a representative. In *Drennen,* the court stated:

> The fact that Dr. Burge was and is designated as "member at large" does not gainsay the fact that he resides in the present 6th Congressional District.

Therefore, the court held that each congressional district was at that time represented by a member on the commission. I concur with the reasoning in that holding. The court rejected the argument that the amendment, in stating that each congressional district must be represented, meant the districts as they existed in 1945. It was completely unnecessary to rule on this contention because the court had already properly disposed of the argument presented by the appellants.

The difference in Amendment 35 and Amendment 42 is that the latter states that no two commissioners shall be appointed from any single district. The only way this could possibly be done is to treat the districts as being frozen at the time the amendment became effective or, in any event, not to allow the number of districts to be reduced below five. Amendment 35 allowed more than one member from each district but required that there be at least one member from each district. Amendment 42 prohibits two commissioners serving who are qualified electors of the same district. There is no mention of domicile or residence in this amendment. The proof is clear and unequivocal that Patsy Thomasson was and is a qualified elector of a different district from that of Commissioner Pritchett. However, there must be no other members who are commissioners from the same present congressional district. In order to avoid further litigation I would simply hold that the districts from which the commissioners are to be appointed were frozen as of 1953. If the authors of Amendment 42 had meant to hold highway

commissioners to the same standard in qualificiations as game and fish commissioners, they would have used the same language as in Amendment 35.

STEELE HAYS, Justice, dissenting. I agree with the majority that the appellee had standing to challenge the appointment of Mr. Raymond Pritchett to the Highway Commission. However, I disagree that it was error for the trial court to interpret Amendment No. 42 as requiring that the six congressional districts be treated as "frozen" for purposes of the appointment of Highway Commissioners. I believe the trial court was correct and any other interpretation leads, eventually, to the destruction of the clear intent of the Constitutional Amendment. Since I come to that view I disagree, of necessity, that it is irrelevant whether Ms. Patsy Thomasson is "from" Pulaski County or Cleveland County within the meaning of the amendment. I regard that as the crucial issue.

Section 2 of Amendment No. 42 reads, in part:

The Commissioners to be appointed from the State at large; provided, however, that *no two Commissioners shall be appointed from any single Congressional District.* (My italics.)

I cannot say the trial court was mistaken in finding that Ms. Thomasson and Mr. Pritchett were "from" the same congressional district as the word is ordinarily used and understood. A person is "from" the place where his home and job are located, where he keeps his bank account, the place he gives as his address on his driver's license and tax returns, where he pays real and personal property taxes. Applying such criteria to Ms. Thomasson the court found she was "from" the same congressional district as Mr. Pritchett, whose residency in Pulaski County was not disputed. She did maintain her voting registration in Cleveland County but that appears to have been motivated by sentiment alone and cannot outweigh the strong evidence that her home and employment for ten years have been in Pulaski County.

I agree with Justice Purtle that the result reached in *Drennen* v. *Bennett, Attorney General,* 230 Ark. 330, 322 S.W.2d 585 (1959), was the correct decision on the facts, but I believe it is a mistake to accept the dictum of the case as precedent for a presumption that the Legislature intended the boundaries of congressional districts to change as congressional seats increase or decrease unless the words "as now constituted" are used. The argument would have been more persuasive if the framers of Amendment No. 42 had had the benefit of the decision in *Drennen* v. *Bennett* before they drafted the amendment, but they did not, as the amendment was adopted nearly a decade earlier. *Texarkana Special School Dist.* v. *Consolidated School Dist. No. 2,* 185 Ark. 213, 46 S.W.2d 631 (1932). The dictum of *Drennen* v. *Bennett* is unreliable as precedent for this because: it could lead to a result clearly inconsistent with the express language of the amendment itself. The *Drennen* court noted that Arkansas had consistently gained congressional seats: in 1853 there were two, by 1873 there were four, by 1883 five, by 1891 six, and by 1901 *seven* congressional districts (which remained fixed for fifty years). However, had Arkansas continued to *gain* seats (as might have been expected) and added a district as a result of the approaching 1960 census, the dictum of *Drennen* v. *Bennett* would have been impossible to follow, as Arkansas would have had *eight* congressional districts and a Constitution that fixed its Game and Fish Commission at *seven* members, yet mandating that each district *"must* be represented" — a literal impossibility.

Similarly, to follow the same flawed reasoning in this case results in the destruction of the plain objectives of Amendment No. 42. The amendment states simply that "no two Commissioners shall be appointed *from* any single Congressional District." It would be impossible to make that provision any clearer. Yet the decision reached today, using rules of construction which are to be followed *only* when statutes or constitutional provisions are ambiguous, effectively invalidates that provision.

Amendment No. 42 was overwhelmingly adopted by the electorate. It had a two-fold objective recognized as historical fact: to remove the Highway Commission from

politics, so far as possible, and to preserve *regional representation* within the five member commission. Today's decision ·permits two members to be "from" the same congressional district, the 5th, and leaves two districts, the 2nd and 6th, unrepresented. I believe the result defeats the letter and the spirit of our Constitution as amended and I would affirm the trial court.