The Honorable R. Gunner DeLay State Representative 2525 Rogers Avenue Fort Smith, Arkansas 72901
Dear Representative DeLay:
This is in response to your request for an opinion on two questions submitted in addition to your question previously answered in Op. Att'y Gen. 96-083. Your supplemental request was not received by this office until after Op. Att'y Gen. 96-083 had been issued. Your additional questions are:
 1. Section 4 of Amendment Six to the Arkansas Constitution sets forth the events that must occur before a Lt. Governor can succeed a Governor. One of those events is described as "inability to discharge the powers and duties of the said office". I would appreciate you[r] rendering an opinion as to what circumstances would constitute an "inability to discharge the powers and duties of the said office". Specifically, would it apply to Governor Tucker as he stands for trial in Federal Court?
 2. What is the legal mechanism for transferring the powers and duties of the Governor to the Lt. Governor should the sitting governor be unwilling to transfer those powers voluntarily[?]
The more specific portion of your first question was addressed in Op. Att'y Gen. 96-083. As discussed therein, the question of whether a Governor is unable to discharge the powers and duties of the office is one of fact rather than of law. A question of fact is answered by reference to all the relevant facts and circumstances prevailing in a particular case. Because an endless variety of facts, circumstances, and combinations thereof may be present in particular cases, it is impossible to define in the abstract the circumstances under which a Governor will be unable to discharge the powers and duties of the office within the meaning of the constitutional provision.
With respect to your second question, it is my opinion that no legal proceeding to enforce Ark. Const. amend. 6, § 4, is specifically prescribed by constitutional provision or statute, and no relevant reported case has arisen thereunder or under Ark. Const. art. 6, § 12 (a provision somewhat similar to Ark. Const. amend. 6, § 4, which probably has been superseded in its entirety thereby). There is, accordingly, considerable uncertainty about how the provision might be enforced. Two possible methods of proceeding are discussed below. The enumeration of these two methods is not intended to suggest that there are no other proceedings that might be entertained by the courts in the event that a Governor became unable in fact to discharge the powers and duties of the office and refused to acknowledge his disability.
If a Governor became unable in fact and refused to acknowledge his disability, it is my opinion that a court likely would entertain an action brought under A.C.A. §§ 16-111-101 to -111 for a judgment declaring that the powers and duties of the office of Governor have devolved upon the Lieutenant Governor pursuant to Ark. Const. amend. 6, § 4. As the Lieutenant Governor would have the most clear and direct interest in such a declaration, it seems likely that he would be a proper person to institute the action, although other persons might also have a sufficient interest in the Governor's status to maintain the action. See A.C.A. §§16-111-103, -104, -106. If such an action were entertained and determined, it seems clear that the Governor would be entitled later to seek a declaration that the disability had ended. The devolution of power under Ark. Const. amend. 6, § 4, in the event of disability lasts only "until the disability shall cease."
It is also possible at least that a taxpayer's action under Ark. Const. art. 16, § 13, which authorizes suits to enjoin illegal exactions, might be maintained. In White, Governor v. Hankins, 276 Ark. 562,637 S.W.2d 603 (1982), a gubernatorial appointment to the Arkansas Highway Commission was challenged on grounds that the appointee's residence made him ineligible to serve. The court held that, as the Commission is responsible for spending tax monies, a citizen and taxpayer is entitled under Ark. Const. art. 16, § 13, to bring a action challenging an appointment that might cause the composition of the Commission to be unlawful. See also Spradlin v. Arkansas Ethics Commission, 314 Ark. 108,858 S.W.2d 684 (1993) (taxpayer suit utilized to challenge an appointment to the Ethics Commission); Beshear v. Ripling, 292 Ark. 79,728 S.W.2d 170 (1987) (taxpayer suit challenging the payment of salary to one allegedly unlawfully in office); and Jones v. Clark, Attorney General,278 Ark. 119, 644 S.W.2d 257 (1983) (taxpayer suit challenging the Attorney General's holding of a military position in violation of the Constitution of Arkansas). These cases must, of course, be distinguished from the situation assumed by your request in that the cited cases involved questions of the officeholders' legal eligibility to serve while, here, the question appears to be one of disability, which is subject to cessation at any time, rather than ineligibility. It is possible nonetheless that a court would hold the expenditure of funds by, or the payment of a salary to, a Governor who is in fact disabled within the meaning of Ark. Const. amend. 6, § 4, to be an illegal exaction for so long as the disability continues.
Finally, I reiterate my view, stated in Op. Att'y Gen. 96-083, that the relevant facts and circumstances of which I am aware do not suggest that the Governor is now unable to discharge the powers and duties of his office as contemplated by Ark. Const. amend. 6, § 4.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh