The Honorable Donna Hutchinson State Representative 24 Rillington Drive Bella Vista, AR 72714-3204
Dear Representative Hutchinson:
I am writing in response to your request for my opinion "regarding the ability of the General Assembly to legislate the use of funds by the State Highway Commission for a specific purpose." You state the following as background information and ask that I address the following question:
 The State Highway Commission was created by Amendment 42 of the Arkansas Constitution. Section 1 of Amendment 42 states that the commission "shall be vested with all powers and duties now or hereafter imposed by law." The powers and duties of the commission are set forth in Arkansas Code Title 27, Chapter 65, one of which is the administrative control of the Arkansas Highway and Transportation Department.
 There are several sources of funding for the Arkansas Highway and Transportation Department. Each year a certain amount of money from both federal and state sources is available to be spent on highway projects at the discretion of the commission.
 Is it within the power of the General Assembly to legislatively direct the Arkansas Highway Commission to prioritize discretionary funds from both federal and state sources so as to ease highway congestion within the state? *Page 2 
RESPONSE
It is my opinion that the answer to your question is "no."
As an initial matter, I will assume for purposes of your question that, as you state, "a certain amount of money from both federal and state sources is available to be spent on highway projects at the discretion of the commission." I will therefore not engage in a protracted discussion of federal and state highway funding in order to explore this point. See in this regard, Save Barton Creek Association v.Federal Highway Administration, 950 F.2d 1129, 1134 (5th
Cir. 1992) at n. 6 (describing the "statutory and regulatory criteria for federal-aid highway funding" as an "elaborate, intricate scheme"). In addition, your question asks about the power of the General Assembly to "legislatively direct" the Arkansas Highway Commission to prioritize discretionary funds from both federal and state sources so as to ease highway congestion within the state. I assume that this question contemplates the passage of a law by the General Assembly requiring this action by the Commission. It is difficult, in this regard, to analyze the constitutionality of a hypothetical bill. The actual provisions of the measure will be important in assessing its constitutionality. I will assume for purposes of this opinion, however, that such a bill would, as you note, "direct" the Highway Commission to prioritize expenditures so as to ease highway congestion.
That being said, it is generally held, as a canon of state constitutional construction, that a state constitution is not a grant of enumerated powers to a state general assembly, but is rather a limitation on the power of a general assembly to act. See, e.g.,Erxleben v. Horton Printing Co., 283 Ark. 272, 675 S.W.2d 638 (1984);Wells v. Purcell, 267 Ark. 456, 592 S.W.2d 100 (1979); Jones v.Mears, 256 Ark. 825, 510 S.W.2d 857 (1974); and Berry v. Gordon,237 Ark. 547, 376 S.W.2d 279 (1964). That is, the legislature has absolute power to legislate in all fields unless it is expressly or by necessary implication denied that power by the Arkansas or United States Constitution. Id. It is only when legislation expressly, or by necessary implication, violates a provision of one of those documents that the legislation will be struck down as unconstitutional. North Little RockTransp. Co. v. City of North Little Rock, 207 Ark. 976, 184 S.W.2d 52
(1945). Bush v. Martineau, 174 Ark. 214, 295 S.W. 9 (1927).
An analysis of your question will thus entail a determination of whether a legislative enactment of the type you describe would, either expressly or *Page 3 
impliedly, transgress any provision of the Arkansas or United States Constitutions. Although you have not stated any particular constitutional provisions implicated by your question, in my opinion the most relevant potential impediments are Arkansas Constitution, Amendment42 (the Highway Commission Amendment), and Arkansas Constitution, art. 4, §§ 1 and 2 (the "separation of powers" doctrine). I will discuss the possible limitations of these two provisions below.
Amendment 42
As you note in your request, the Arkansas State Highway Commission (the "Commission"), was created in 1952 pursuant to Ark. Const. amend.42. Section 1 of Amendment 42 provides as follows:
 There is hereby created a State Highway Commission which shall be vested with all the powers and duties now or hereafter imposed by law for the administration of the State Highway Department, together with all powers necessary or proper to enable the Commission or any of its officers or employees to carry out fully and effectively the regulations and laws relating to the State Highway Department.
There are several other sections of Amendment 42, but the relevant one for our purposes is Section 1 above, and perhaps Section 6, which provides that "The Commission shall appoint a Director of Highways who shall have such duties as may be prescribed by the Commission or by statute." Your question involves an analysis of these provisions to determine the relative power of the Commission and the General Assembly. To what extent do the above provisions invest the Commission with independent authority over allocation of discretionary highway resources, or likewise restrict the power of the General Assembly in that regard?
I have found no Arkansas case law expressly addressing this question. It has been stated, however, that in matters relating to constitutional amendments, the intent of the people is controlling. Bailey v.Abington, 201 Ark. 1072, 149 S.W.2d 573, 148 S.W.2d 176 (1941). See alsoFaubus v. Kinney, 239 Ark. 443, 389 S.W.2d 887 (1965). The Arkansas Supreme Court has stated that in interpreting constitutional provisions, it may be helpful to determine what changes the constitutional amendment was intended to make and the history of the times and conditions existing at the time of adoption. State v. Oldner, 361 Ark. 316,79 S.W.3d 831 (2005); ACW, Inc. v. Weiss, 329 Ark. 302, 947 S.W.2d 770
(1997); and Bryant v. English, *Page 4 311 Ark. 187, 843 S.W.2d 308 (1992). The court should constantly keep in mind the object sought to be accomplished by an amendment's adoption, and the evils, if any, sought to be prevented or remedied, and effect should be given to the purpose indicated by a fair interpretation of the language used. Bailey, supra at 1078-79. The court will endeavor to effectuate as nearly as possible the intent of the people in passing the measure, and, if necessary, as a means of attaining that end, a liberal interpretation will be warranted. Pakay v. Davis, 367 Ark. 421,241 S.W.3d 257 (2006). The intention is to be gathered from both the letter and the spirit of the instrument. See Bailey v. Abington, supra andState v. New York Life Ins. Co., 119 Ark. 314, 173 S.W. 1099 (1915). As noted in Brewer v. Fergus, 348 Ark. 577, 583, 79 S.W.3d 831 (2002), the words of the constitution should ordinarily be given their obvious and natural meaning. A court must therefore ascertain the "natural signification" of the words used. Carter v. Cain, 179 Ark. 79,14 S.W.2d 250 (1929).
In addition, long-standing executive and legislative interpretation of constitutional provisions will be afforded some weight by the courts when such provisions are ambiguous. It has been stated that "[l]ong-continued contemporaneous and practical interpretation of a statute by the executive officers charged with its administration and enforcement, the courts, and the public constitutes an invaluable aid in determining the meaning of a doubtful statute." Sutherland,Statutory Construction, § 49.03 6th ed. The Arkansas Supreme Court has stated that: "[l]egislative interpretation of constitutional provisions is never binding on the courts, but, if there is any doubt or ambiguity, it is persuasive and entitled to some consideration." Mears, CountyJudge v. Hall, 263 Ark. 827, 835, 569 S.W.2d 91(1978), citing Griffin v.Rhoton, 85 Ark. 89, 107 S.W. 380 (1907). It has also been stated, however, that "[l]egislative and/or Executive interpretations are to be given consideration only when the Constitutional provision is ambiguous." Parkin Printing Stationary Co. v. Arkansas Printing andLithograph Co., 234 Ark. 697, 706, 354 S.W.2d 560 (1962).
In order to answer your question, therefore, regarding any relevant limits of the General Assembly's power under Amendment 42, I will analyze the history and intention of Amendment 42, the changes in the law it sought to bring about, and the "evil to be remedied," the "natural signification" of its language and the manner in which it has historically been interpreted.
As noted above, Amendment 42 was adopted in 1952. I have found no helpful case law discussing the impetus for the adoption of Amendment 42, but it is *Page 5 
discussed by certain other authorities. For example, the following is stated in Ben F. Johnson, III, Arkansas in Modern America (University of Arkansas Press, 2000):
 Governor Sidney McMath successfully lobbied the 1949 legislature to submit a twenty-eight million-dollar general obligation bond issue to the voters for highway construction and maintenance. Opponents, who somberly recalled public insolvency during the Depression, were drowned out by the state's chambers of commerce, civic clubs, and the Farm Bureau. Voters sanctioned the bond issue by a four to one margin. Almost twenty-three hundred highway miles were added during the McMath years, but the rapid and massive program exposed the governor to charges of bribery and featherbedding. A 1952 highway audit commission concluded that the administration had solicited campaign contributions from contractors and vendors and continued to distribute highway department posts as rewards for supporters.
 * * * The administration staunchly maintained that it followed a policy of favoring friends only when price and quality were equal to that of other bidders. While the two thousand pages of audit commission transcripts detailed influence peddling, the investigation produced no indictments of administration officials. Nevertheless, this practice of old school politics by a reform administration persuaded the voters in 1952 to approve another constitutional shift of authority from elected officials to long-term independent appointees.
[1]
 Known as the Mack-Blackwell amendment after its legislative sponsors, Amendment 42 established a state highway commission of five members whose staggered ten-year terms were intended to encourage the development of long-term plans without the contamination of political pressures. As with the [Game and Fish *Page 6 
Commission], the commission, rather than the governor, enjoyed the right to name a director to oversee the Highway Department.
Id. at 95-96 (emphasis added). See also, An Interim Report by theArkansas State Highway Audit Commission to the Members of the GeneralAssembly of 1951 and to the Taxpaying Citizens of State at 4, 6 and 9 (decrying the "short-sighted factional interests," "political pressures," and "political promises of the moment" at play in previous highway governance, especially with regard to projects financed entirely from state revenues, without the restrictions of federal regulations and inspections, and urging a Commission and highway administration that is "kept free of political dictation"). See also, The Encyclopedia of Arkansas History and Culture (www.encyclopediaofarkansas.net) (tracing the Arkansas Highway Commission, in its various incarnations prior to and after the adoption of Amendment 42 and noting the above-mentioned "improprieties ranging from road construction for political favors to purchasing procedures to hiring practices" as prompting the Amendment);White v. Hankins, 276 Ark. 562, 637 S.W.2d 603 (1982) (Hays, J. dissenting) (stating that Amendment 42 had a "two-fold objective recognized as historical fact: to remove the Highway Commission from politics, so far as possible, and to preserve regionalrepresentation with the five member commission"); and Editorial, "Mack-Blackwell Amendment," Arkansas Gazette, (November 2, 1952) at 1A, describing Amendment 42 as being "designed to divorce highway operations, so far as possible, from politics").[2]
The history of Amendment 42's adoption thus reflects a desire to detach the Commission's actions from the realm of politics and the inducements and pressures surrounding the same. Also mentioned above is the benefit of long-range planning, which could presumably be undertaken only in the absence of political pressures. The actual actions recounted above as precipitating the Amendment appear to have been primarily gubernatorial rather than legislative in nature, however. As a consequence, it is clear, in my opinion, that "[no] member of the Highway Department or any of the Commissioners is a subordinate in any of the offices making up the executive department." Parkin Printing Stationary Company v. Arkansas Printing and Lithograph Company, *Page 7 234 Ark. 697, 711, 354 S.W.2d 560 (1962) (Robinson, J. dissenting).See also, "Cherry Tells Road Board Choices," Sam G. Harris, Arkansas Gazette, October 19, 1952 p. 2A (reporting that initial proposed Commission appointee Raymond F. Orr said "the commission would welcome suggestions from the governor but that it was reserving the right to reject the governor's proposals" and quoting Governor Cherry as saying that "from time to time I will make recommendations to the commission but I will not fall out with them if they don't accept them").
What is somewhat less clear under the history recounted above is the exact extent of any retained power of the legislative department to adopt laws, set policy, or to direct allocation of resources by the Commission. Closer reference to the language used in Amendment 42 is necessary in this regard. As you note, the language employed in Section 1 of Amendment 42 unquestionably makes reference to the General Assembly's power to make laws relating to the Commission and the Department, stating: "There is hereby created a State Highway Commission which shall be vested with all the powers and duties now or hereafterimposed by law for the administration of the State Highway Department, together with all powers necessary or proper to enable the Commission or any of its officers or employees to carry out fully and effectively theregulations and laws relating to the State Highway Department." (Emphasis added). See also, Amendment 42, § 6 (stating that the Commission shall appoint a Director of Highways, "who shall have such duties as may be prescribed by the Commission or by statute"). (Emphasis added). Amendment 42' references to laws adopted by the General Assembly indicate some reservation of power to the General Assembly to pass laws affecting the Commission and the Department. See Arkansas Motor CarriersAssociation Inc. v. Pritchett, 303 Ark. 620, 798 S.W.2d 918 (1990)) ("Amendment 42, 1, to the Arkansas Constitution of 1874, by its own language recognizes that additional powers and duties may be provided for the State Highway Commission.") See also, Op. Att'y Gen. 89-104
(stating that ". . . it must . . . be recognized that the powers and duties of the Commission are `imposed by law . . .' and that "[r]eference to state laws other than those imposed in implementation of Amendment 42 is, therefore, appropriate in assessing the parameters of the Commission's administrative authority").
On the other hand, the language of the amendment also affirmatively establishes the Arkansas Highway Commission as the constitutional entity with responsibility for "administration" of the Highway Department. *Page 8 
Under established rules of constitutional construction, the "natural signification" of the language must be determined. The language is striking in two respects. On the one hand, the phrase providing that "a State Highway Commission . . . shall be vested with all the powers and duties now or hereafter imposed by law" clearly indicates that the General Assembly is constitutionally authorized to impose duties upon the Commission and to require the Commission's compliance with such duties in exercising its authority. On the other hand, equally striking is the provision of Amendment 42, § 1 acknowledging that the legislature's authority to vest the Commission with "powers and duties" must be channeled to promote the Commission's constitutional power over "the administration of the State Highway Department." (Emphasis added).
In this regard, the word "administration" is generally defined as the "management of any office, business, or organization. . . ." RandomHouse Webster's Unabridged Dictionary (2nd ed. 2001) (emphasis added). It has been stated in a similar context that: "Allocation of resources and establishment of priorities are the essence of management." Chaffin v. Arkansas Game and Fish Commission,296 Ark. 431, 437, 757 S.W.2d 950
(1988) (striking down, under Amendment 35 and the "separation of powers" doctrine, certain legislative enactments restricting Arkansas Game Fish Commission expenditures).[3] In my opinion, Amendment 42's language would be similarly interpreted to recognize that establishment of priorities and allocation of resources are constitutional functions of the Commission. As stated by one of my predecessors, the "essence of the Commission's power is . . . the superintending control of the State Highway Department." Op. Att'y Gen.95-074. See also generally, Jennings v. Lynch, 228 Ark. 424, 426,307 S.W.2d 781 (1957) (stating that "constructing and routing highways are matters of discretion with the Highway Commission and [are] not subject to control by mandamus"). In this regard, the Commission has been *Page 9 
referred to as an "[i]ndependent constitutional agenc[y]," and a "constitutional body." Commission on Judicial Discipline and Disabilityv. Digby, 303 Ark. 24, 792 S.W.2d 594 (1990) and Arkansas Motor CarriersAssociation Inc., v. Pritchett, 303 Ark. 620, 798 S.W.2d 918 (1990)).See also, Griffen v. Arkansas Judicial Discipline and DisabilityCommission, 355 Ark. 38, 130 S.W.3d 524 (2003).[4] Historical evidence indicates that the Commission, from its inception, was viewed as a "policy making group." See "Cherry Tells Road Board Choices," Sam G. Harris, Arkansas Gazette, supra at 2A.
As stated above, I have found no case law expressly addressing the relative power of the General Assembly and the Arkansas Highway Commission over the question of highway spending priorities. One of my predecessors, however, addressed an analogous issue in Op. Att'y Gen.95-074. The question in that opinion was whether the legislature had the power to amend a pending bill to substitute the Arkansas Development Finance Authority for the Arkansas Highway Commission as the issuer of 3,500,000,000 in highway bonds after a statewide vote on the question. The issue was whether such legislative action would violate Amendment 42. My predecessor concluded that it would not, stating:
 Senate Bill 662, if amended in the manner you suggest, would substitute the Arkansas Development Finance Authority ("ADFA") as the issuing agency, and would invest it with all the powers relating to the bond issue, such as the power to determine the terms and conditions under which the bonds shall be issued and sold, the power to select professionals such as legal counsel, financial advisors, underwriters, trustees, paying agents, and remarketers, and the power to issue refunding bonds. Senate Bill 662, however, as amended, would leave to the Arkansas Highway Commission the responsibility of preparing and distributing a report setting forth the highway improvements which would be financed if the bonds are issued, and the estimated cost of each *Page 10 highway improvement. See SB 662 at Sections 4 and 6. It is my opinion that this state of facts is consistent with Amendment 42. . . .
 * * * It is thus my opinion that the legislature has broad authority to define the powers and duties to be exercised by the Arkansas Highway Commission in its governance of the State Highway Department. I can find nothing in Amendment 42 which would require, as a constitutional matter, that the Arkansas Highway Commission be the issuing agency on a bond issue to fund the construction and maintenance of highways. It is my opinion, rather, that the method of raising funds to support such purposes is properly within the legislative prerogative, while the authority to expend such funds for highway purposes, after proper appropriation, falls within the authority granted the Commission. Senate Bill 662, if amended in the manner you suggest, would appear to conform with this requirement.
Id. at 2 (emphasis added); (footnotes omitted).
Although my predecessor concluded, in accordance with the text quoted immediately above, that "the legislature has broad authority to define the powers and duties to be exercised by the Arkansas Highway Commission in its governance of the State Highway Department," he further offered the following crucial footnote:
 This power is not absolute, however. If this provision of Amendment 42 were interpreted to give the General Assembly complete power to alter or define the authority of the Commission, this construction would render meaningless the constitutional status of the Highway Commission and Amendment 42. Although the legislature has broad powers to define the duties of the Commission under Amendment 42, this power cannot, in my opinion, be exercised to defeat the purposes of the Amendment.
Id. at n. 3. *Page 11 
In my opinion, the intention and language of Amendment 42 lead to the conclusion that the Arkansas General Assembly is without power to dictate spending priorities of the Arkansas Highway Commission. The Commission was intended to operate as a policy-making group outside the realm of politics and to formulate long-range plans for the entire state.
Support for this conclusion is also found in the historical legislative interpretation of the Amendment. As noted above, legislative construction of constitutional amendments, especially where contemporaneous, is to be given great weight and resorted to in the case of any ambiguity. Hooker v. Parkin, 235 Ark. 218, 357 S.W.2d 534 (1962). In this regard, the powers the legislature has both recognized in and assigned to the Commission are set forth in title 27, chapter 65 of the Arkansas Code (Repl. 1994 Supp. 2007). Many of these powers were added by virtue of Act 123 of 1953, shortly after the effective date of Amendment 42:
 A.C.A. § 27-65-102
 The administrative control of the Arkansas State Highway and Transportation Department shall be vested in the State Highway Commission.
 A.C.A. § 27-65-107 (Supp. 2007)
 (a) The State Highway Commission shall be vested with the following powers and shall have the following duties:
 (1) To divide the state highway system into such maintenance and construction districts as the commission deems reasonable and proper for the performance of its duties hereunder;
 (2) To let all contracts for the construction, improvement, and maintenance of the roads comprising the state highway system upon such terms and upon such conditions as required by law;
 (3) To comply fully with the provisions of the present or future federal aid acts. The commission may:
 (A) Enter into all contracts or agreements with the United States Government relating to the survey, construction, improvement, *Page 12 
and maintenance of roads under the provisions of any present or future congressional enactment;
 (B) Submit any scheme or program for construction or maintenance as may be required by the Federal Highway Administration, or otherwise provided by federal acts; and
 (C) Do all other things necessary and proper, to carry out fully the cooperation contemplated and provided for by present or future acts of Congress for the construction, improvement, and maintenance of roads in rural or urban areas;
 (4) To establish a program of current and long-range planning for the state highway system and to develop and coordinate a balanced statewide unified transportation plan for all modes[.]
(Emphasis added).[5]
In addition, 1999 legislation authorizing the issuance of highway bonds clearly recognizes the Highway Commission as the entity with authority to determine the allocation of bond revenues:
 27-64-205. Projects to be financed.
 (a) The State Highway Commission shall prepare and distribute to the Governor a report setting forth the specific highway improvement projects which would be financed if all of the authorized bonds were to be issued and the estimated cost of each project.
 (b) Upon receipt of the report described in subsection (a) of this section, the Governor shall, if he or she deems it to be in the *Page 13 
public interest, by proclamation call an election on the question of issuing the bonds.
 (c) The report of projects described in subsection (a) of this section may be modified by the commission from time to time in accordance with Arkansas Constitution, Amendment 42.
(Emphasis added). See also, A.C.A. §§ 27-64-213, 314 and 414 (each stating, in authorizing the issuance of bonds, that "[a]ll powers granted to the State Highway Commission pursuant to this subchapter shall be deemed in addition to such powers as already exist pursuant to Arkansas Constitution, Amendment 42 and the laws of the State of Arkansas"). See also, A.C.A. § 27-76-410, a provision of the "Regional Mobility Authority Act" (2007) (stating that "[n]othing in this section shall interfere with the responsibility and authority of the Arkansas State Highway and Transportation Department and the State Highway Commission to perform transportation systems planning").
The references to Amendment 42 above appear to reflect legislative recognition of an independent, affirmative, constitutional power in the Commission to direct the expenditure of highway bond revenues. Seealso, Diane D. Blair, Arkansas Politics and Government, Do the PeopleRule? (University of Nebraska Press, 1988) at 147 (referring, in 1988, to the "legendary" independence and power of the long-time Director of Highways).
As noted above, however, the Arkansas General Assembly possesses, and in some instances has exercised, some level of retained authority under Amendment 42 to enact laws imposing duties on the Commission and the Department. See, e.g., A.C.A. 27-64-206 (restricting the expenditure of 1999 bond revenues to "interstate highway systems"); and A.C.A. §27-72-313 (requiring "fifty percent (50%) of all federal-aid secondary road funds allocated to this state [each year to] be set aside by the State Highway Commission for use on county secondary road projects on the federal-aid secondary roads that are included in the state aid road system"). It is unnecessary to determine the exact contours of this authority in the abstract, however, because in my opinion the question you pose regarding the establishment of highway spending priorities strikes at the heart of the Commission's constitutional power under Amendment 42. In my opinion the General Assembly may not, under Amendment 42, "direct the Arkansas Highway Commission to prioritize discretionary funds from both federal and state sources so as to ease highway congestion within the state." *Page 14 
The Separation of Powers Doctrine
Moreover, legislative direction over the spending priorities of the Commission will also in my opinion contravene the separation of powers doctrine found at Arkansas Constitution, art. 4, §§ 1 and 2:
 § 1. Departments of government.
 The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another.
 § 2. Separation of departments.
 No person, or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted.
A similar issue was address in Chaffin v. Arkansas Game and FishCommission, 296 Ark. 431, 437, 757 S.W.2d 950 (1988). The court inChaffin found, with regard to a legislative enactment restricting the expenditures the Game and Fish Commission could make in connection with its magazine, that the legislature was "attempting to substitute its judgment" in that instance "for that of the commission, on a question of management of resources" and that this is "something [the Legislature] cannot do." Id. at 438.
As noted above, it has been stated by the Arkansas Supreme Court that "The Highway Commission established by Amendment 42 is, in a large measure, patterned after the Game and Fish Commission which was established by Amendment 35." White, Governor v. Hankins, 276 Ark. 562,637 S.W.2d 603 (1982). The Highway Commission and the Arkansas Game and Fish Commission are similar constitutional entities for purposes of applying the Chaffin analysis. See, e.g., Chaffin, at 438 (stating that "[o]bviously, Amendment 35 gave the commission more power to act independently than other state agencies which are not independent constitutional agencies"). Although the court in Chaffin grounded *Page 15 
its decision in part upon the provisions of Amendment 35, which are particular to the Game and Fish Commission, it also concluded that the legislative action in that case violated the separation of powers doctrine, set out above. That conclusion and the rationale behind it, are in my opinion similarly applicable to the question you pose, which involves the prioritization or allocation of otherwise unrestricted Commission resources. See also, State Board of Workforce Education v.King, 336 Ark. 409, 985 S.W.2d 731 (1999) (striking down service of legislators on certain executive boards, and citing Starnes v.Sadler, 237 Ark. 325, 372 S.W.2d 585 (1963) for the proposition that the separation of powers doctrine is violated when legislators "are empowered to manage, control and supervise a considerable amount of state property, assets and funds . . .").
In my opinion, therefore, the answer to your question is "no," it is not within the power of the General Assembly to legislatively direct the Arkansas Highway Commission to prioritize discretionary funds from both federal and state sources so as to ease highway congestion within the state.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The first such "shift of authority" referred to above was the creation of the Arkansas Game and Fish Commission, pursuant to Arkansas Constitution, Amendment 35 in 1944. Id. at 95.
[2] The American Heritage Dictionary of the English Language (Fourth Edition, 2000), defines "politics" in a variety of ways, including: "The art or science of government or governing, especially the governing of a political entity, such as a nation, and the administration and control of its internal and external affairs;" "The methods or tactics involved in managing a state or government;" "Intrigue or maneuvering within a political unit or group in order to gain control or power" and as "The often internally conflicting interrelationships among people in a society."
[3] It has been stated that "The Highway Commission established by Amendment 42 is, in a large measure, patterned after the Game and Fish Commission which was established by Amendment 35." White, Governor v.Hankins, 276 Ark. 562, 637 S.W.2d 603 (1982). It should be recognized that, somewhat unlike Amendment 42, the language of Amendment 35, regarding the Arkansas Game and Fish Commission, affirmatively vests direct "control, management, restoration, conservation and regulation" of wildlife resources in that Commission and expressly grants certain "exclusive" authority to the Game and Fish Commission. Amendment 35, §§ 1 and 8. See also, Arkansas Wildlife Federation v. Arkansas Soil andWater Conservation Commission (Ark.Sup.Ct. 05-1009, April 4, 2006). Amendment 35, however, similar to Amendment 42, invests the Game and Fish Commission with "the administration of the laws now and/or hereafter pertaining thereto. . . ." Id. at § 1. (Emphasis added). It is clear that this similar language regarding the "administration of . . . laws" does not grant the Arkansas General Assembly power to dictate spending priorities of the Commission. See Chaffin, supra.
[4] The Arkansas Supreme Court, in Parkin Printing Stationary Co. v.Arkansas Printing Lithographing Co., 234 Ark. 697, 354 S.W.2d 560
(1962) characterized AHC as a subdivision of the executive department, but the court in Pritchett, supra stated that: "[i]t is more proper to characterize AHC as an agency of government, whose total duties and responsibilities may not all belong to any one department, than label it an arm of either the executive branch or the legislative branch."303 Ark. at 624.
[5] Act 192 of 1977 added the last clause in subsection (a)(4) of A.C.A. § 27-65-102 above, and directed the State Highway and Transportation Department to "establish and maintain coordination" with public and private transportation agencies; establish a state plan for rail transportation services; and coordinate research into the problems of mass transit. . . ." Acts 1977, 192, §§ 3, 8 and 9. These directives, which are either cooperative in nature, or leave substantial discretion to the Commission and/or Department in implementation, do not reflect any historical legislative control over resource allocation by the Commission.